No. 23,960.

F. Dumont Smith, *Appellee*, v. The Brown-Crummer Investment Company, *Appellant*.

SYLLABUS BY THE COURT.

1. Contract—*Attorney's Fee—Substitution of New Debtor—Novation—Statute of Frauds.* A board of county commissioners employed an attorney to sue a bond-broking firm for breach of a contract to purchase county bonds. The attorney's fee was specified to cover collection in full and also for cash settlement. The attorney performed services pursuant thereto. Afterwards negotiations looking to a settlement of the damage claim and for a revision of the contract to purchase county bonds were begun, during all of which the defendant was fully advised that any settlement would have to include payment by defendant for the services of the attorney employed by the county. The defendant orally agreed to this arrangement, and with the advice and acquiescence of the attorney, and upon the understanding of the county board that the defendant would pay the attorney's fee, the board made a new contract with defendant for the purchase of county bonds and released the defendant from all claims for damages for breach of defendant's earlier contract to purchase bonds. *Held,* that defendant's oral promise to pay the attorney's fee was an original and independent promise whereby the defendant was substituted for the county board as plaintiff's debtor, and the county board was released from its obligation to plaintiff, and the defendant was released from the county's claim for damages, and that such transaction constituted a novation, and was not within the statute of frauds.

2. Same. Under the circumstances outlined in section 1 of the syllabus, a formal agreement between the county board and the attorney releasing the county from all claims for his services was unnecessary.

3. SAME—*Excluded Evidence—Not Reviewable.* Excluded evidence not submitted on the motion for a new trial presents no question for review.

4. SAME—*Contract of Employment.* There was no uncertainty touching the plaintiff's contract of employment.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed November 4, 1922. Affirmed.

*C. M. Williams, D. C. Martindell,* both of Hutchinson, *Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, Forest D. Siefkin,* and *James G. Norton,* all of Wichita, for the appellant.

*Carr W. Taylor,* and *Eustace Smith,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: Plaintiff brought this action to recover a sum of money alleged to be due him from defendant by virtue of the latter's assumption of an obligation originally owed to plaintiff by a third party.

The circumstances may be summarized: The board of county commissioners of Barton county was engaged in extensive projects of road building, which necessitated the raising of large sums of money by the issue of bonds. The defendant, The Brown-Crummer Investment Company, is a financial concern which deals in municipal bonds. The road projects of the county board were interrupted by litigation which challenged the legality of the board's proceedings. Meantime contracts for the purchase of some of the road bonds had been entered into between the county board and the defendant investment company, and pursuant thereto $60,000 worth of bonds for road improvements had been issued and delivered to the defendant company. On that issue of bonds, while the legality of selling such bonds for less than par was an open question (since decided in *Rowland v. Reno County,* 108 Kan. 440, 195 Pac. 868), it was agreed that the defendant should pay par for the bonds and the county board would allow the investment company the equivalent of five per cent for printing the bonds and for attorneys' services in preparing the resolutions and proceedings pertaining thereto. The matter of payment of this five per cent deduction was deferred, and the county received the full amount of the first issue in cash. A later issue of bonds which the defendant was apparently obligated to buy was declined, and the county board sold them to another party at the prevailing market price, which was $15,840 below par; and the board employed the plaintiff as attorney to sue the defend-

ant for that sum as damages. After plaintiff had prepared a peti-
tion to recover the $15,840, correspondence and negotiations were
entered into for the composition of claims and counterclaims be-
tween the county board and the defendant. In this correspondence
it was made clear to defendant that if the county waived its claim
for damages defendant would have to pay for plaintiff's services to
the county on account of that claim for damages. In a letter to de-
fendant and its attorney, plaintiff wrote:

"They [the county board] are willing to enter into a binding contract.
. . . There is only one difficulty in the way. On the basis of this settlement
they [the county board] will owe us a fee. They do not feel that they can
take this fee out of the bond issue. They dislike to pay it out of the general
funds of the county. Inasmuch as Mr. Crummer stated that he could sell the
Project D stuff at the price at which he would have to take it, he is losing
nothing; and they directed me to make this proposition, that they would go
ahead on the terms outlined here, provided Messrs. Brown & Crummer would
pay our fee, so that the county is out nothing by the compromise. The situa-
tion would amount to this, that Brown-Crummer would secure a release from
their obligation, get rid of a lawsuit that, to say the least, is dangerous, and
have a binding option on this issue of bonds in the future out of which they
are bound to make money, and be out nothing but our fee."

Eventually a new contract was made and signed by the county
board and the defendant, in which it was stipulated that the county
would release the defendant from its claim for damages, and that
the defendant should have first call at market price on the further
road bond issues, and that the defendant's cross claim against the
county for $3,000 should "remain an open question." It was also
orally agreed—so plaintiff alleged in this action—that defendant
should pay the plaintiff $2,000 for his services to the county. Plain-
tiff's contract of employment by the county had provided that if he
recovered the $15,840 from the defendant his fee should be $5,000,
and if a cash settlement satisfactory to the county were effected
with defendant, his fee should be ten per cent.

Plaintiff's evidence fully substantiated the material allegations of
his petition. Indeed, the defendant did not altogether deny liability,
but contended that it was contingent upon its recovering its claim
for $3,000 against the county.

Defendant's chief officer testified:

"It is possible that it was mentioned, that Mr. Smith's fee would be taken
care of, if an adjustment was effected. . . . Mr. Smith insisted on the pay-
ment of $2,000.00 attorney's fees, for which I agreed to pay provided this
$3,000.00 fee due us from the county was recognized and paid, and the balance
of that contract agreed to and signed. I stated very positively to Mr. Smith

that we owed him nothing and that any fee he had coming from Barton county would have to be taken care of out of this contract; and that if they recognized this $3,000.00 fee and agreed to a sale of the bonds at a price that we could afford to buy them at, I would pay the $2,000.00 fee that he was demanding. I never at any time agreed to pay Mr. Smith's fee out of my funds except this $3,000.00. . . . It was said that the signing of this contract as it was then submitted and the execution and carrying it out would carry with it the payment of the fee—I can't say who did say that. There was not much discussion of the fee. I just hazily remember that statement was made, that the signing of that contract would carry with it the payment of the fee by us, I think Mr. Smith made the statement. I never did make it. At the time that statement was made, if this contract had been signed as it was agreed to, that was the intention."

This controverted issue of fact was clearly defined by the trial court in its instructions to the jury. The verdict and judgment were for plaintiff, and defendant appeals. It contends that the contract was unenforceable because oral and within the statute of frauds and lacking in consideration.

There is no trouble about the sufficiency of the consideration. Plaintiff had a valid contract with the county board to sue and collect $15,840 from defendant, at an agreed fee of $5,000 if he won, and for ten per cent of any cash settlement to which the county board might agree. The board and the defendant composed this and other matters by making a new contract, the effect of which was to terminate the services of plaintiff, and by which defendant got rid of the county's claim against it for $15,840; but as the county's claim against defendant had been settled on terms not contemplated when the plaintiff was employed, he was entitled to a *quantum meruit* from the county, and had an interest in the disposition of the county's claim against defendant, and that interest had to be satisfied before the county board could prudently make a new contract with defendant. Moreover, defendant got full consideration for its promise to pay plaintiff's fee. It thereby relieved itself of the county's claim for $15,840. Clearly, then, it was to serve defendant's own advantage (*Johnson v. Huffaker*, 99 Kan. 466, 162 Pac. 1150) that defendant made this original and independent promise to pay plaintiff $2,000, and in reliance thereon plaintiff acquiesced in the settlement of the county's claim—a claim in which he had a substantial interest by virtue of his employment for its collection. Defendant's promise to pay the $2,000 was, in effect, a substitution for the plaintiff's claim against the county.

In 27 C. J. 152, it is said:

"It is a general rule that an oral promise to pay the preëxisting debt of another in consideration that the original debtor shall be discharged from liability thereon is not within the statute. In such a case, it being agreed that the debt of the original debtor shall be extinguished, there remains no obligation to which the undertaking of the promisor can be collateral, and the promise being founded on a sufficient consideration, namely, detriment to the promisee in the loss of his debt or claim against the original debtor, the promisor becomes an original debtor to an amount equal to the original debt."

It is argued that there was no evidence of an agreement that the plaintiff had released Barton county. There was evidence of an understanding to that effect; two of the county board testified to that effect. In 27 C. J. 154, it is said:

"Where the creditor, the debtor, and a third person who owes the debtor mutually agree that such third person shall be substituted for the debtor and that the debtor shall be discharged from his debt to the creditor and the third person shall be discharged from his debt to the original debtor, the transaction constitutes a novation and is not within the statute for the reason that in such cases the promise is to pay the promisor's own debt, and also because there is no subsisting debt of another to which the promise can be collateral, liability upon the promise being the only liability left in force by the novation."

This doctrine is supported by a wealth of authorities, including our own early case of *Grant v. Pendery*, 15 Kan. 236, which in some respects is analogous to the case at bar. In that case Pendery was a creditor of Cooper. Grant bought some property from Cooper, agreeing to pay the purchase price to Pendery. Pendery gave Cooper credit for the agreed amount of the purchase price. Grant failed to pay. Pendery sued. Grant raised the statute of frauds, and this court held that the statute did not apply.

Here, by analogy, plaintiff was a creditor on *quantum meruit* of the county board. Defendant (subject to the hazard of a lawsuit) owed the county board a large sum in damages. Defendant, in consideration of its release from the county's claim for damages, promised to pay for the services of the county's lawyer employed to collect that claim. Defendant failed to pay. In such case, the statute of frauds does not apply.

Error is also assigned on the exclusion of evidence which might have shown that the county board afterwards repudiated its agreement with appellant. It is not clear how that fact, if true, could affect defendant's liability to this plaintiff; but this excluded evidence was not presented in support of the motion for a new trial; it

is not here for review, and therefore no error can be based thereon. (*The State v. Ball,* 110 Kan. 428, 432, 204 Pac. 701.)

It is finally urged that the contract of employment between plaintiff and the county board was uncertain and could not form a basis for recovery against appellant. There is no merit to this contention. The contract was as definite as one between an attorney and client usually is—so much, if he won; or a percentage of any sum paid on a cash settlement. A settlement on any other basis gave rise to a claim for services *quantum meruit.* Furthermore, if any uncertainty inhered in the plaintiff's original contract of employment, that uncertainty became immaterial when there was a novation which bound and benefited alike the plaintiff, defendant, and the county board.

We note the argument that here the promise was made to the creditor and not to the debtor. Not so. It was tripartite, mutual and reciprocal between the three parties. It is also urged that the agreement was not made at a formal meeting of the county board. That might be important if the board was resisting an obligation it had irregularly undertaken, but we have no such lawsuit here.

Judgment affirmed.