No. 30,661.

THE BANKERS MORTGAGE COMPANY OF TOPEKA, *Appellant*, v. LOUIS D. BREYFOGLE, G. H. AYRES, and the Unknown Heirs, Executors, etc., of Anna M. Ayres, Deceased, *Appellees*.

(15 P. 2d 440.)

Opinion filed November 5, 1932.

*N. J. Ward, F. A. Holder* and *Mary W. Koger*, all of Topeka, for the appellant.

*John W. Breyfogle, Jr.*, and *S. T. Seaton*, both of Olathe, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Bankers Mortgage Company brought this action against Louis D. Breyfogle, G. H. Ayres, and unknown heirs or representatives to recover on a promissory note for $2,000 executed by L. D. Breyfogle and his wife, Mary A. Breyfogle, and to

foreclose a mortgage on certain real estate given by them to secure the payment of the note.

It was alleged that because of defaults made in the payments on the note and also failure to pay taxes on the mortgaged real estate, the plaintiff was entitled to judgment and foreclosure. The petition included a count to bar defendants from claiming any rights or interests which would be superior to its lien and rights under the mortgage. Louis D. Breyfogle answered and alleged that his wife, Mary A. Breyfogle, had died on the 3d of July, 1927, leaving Louis D. Breyfogle as the sole owner of the mortgaged property. He further alleged that he had since sold the mortgaged property to Anna M. Ayres, subject to the $2,000 mortgage which she, as purchaser, assumed to pay; and that plaintiff, through Forrest Cave, its duly authorized agent, orally agreed to accept the assumption of Anna M. Ayres as the obligor of the mortgage indebtedness and release Louis D. Breyfogle from that obligation. It was further alleged that in pursuance of the agreement Anna M. Ayres executed and delivered to plaintiff an assumption of the mortgage and obligation referred to, and that the same was duly received and accepted by the plaintiff, and that plaintiff thereafter treated Anna M. Ayres as its debtor by novation to the said Louis D. Breyfogle.

On the trial the court found that the note and mortgage had been executed as stated, that the mortgaged property had been conveyed to Anna M. Ayres on August 5, 1929; that Mrs. Ayres did assume the indebtedness, that the assumption was accepted by the plaintiff, and that it had released Louis D. Breyfogle from liability on the note and mortgage. Further, that since that time Anna M. Ayres has died, leaving a son, G. H. Ayres, as her only heir, who is a defendant in this action. The court adjudged that the plaintiff was entitled to a judgment *in rem* for the amount of the note and interest, that the lien should be foreclosed and sold subject to redemption during the statutory period. The right of redemption, fixed at eighteen months, was adjudged to be in the defendant, G. H. Ayres.

There is no controversy as to the execution of the note and mortgage given by the Breyfogles or the amount due thereon, nor is there any question that the indebtedness was a first lien on the mortgaged property. The real controversy here is whether the plaintiff was entitled to a personal judgment against Louis D.

Breyfogle, one of the signers of the note, and who was the owner of the property when the note and mortgage were executed. Breyfogle, it appears, had subsequently transferred the real estate to Anna M. Ayres subject to the $2,000 mortgage. He answered and produced evidence tending to show that Mrs. Ayres had in writing assumed the mortgage debt, and that defendant had agreed to accept her as the obligor of the mortgage in lieu of Breyfogle, and that he should be discharged from liability on the obligation.

Upon that question there is a conflict of evidence, with the result that the court held the evidence to be sufficient to prove that there was a substitution of debtors, a valid agreement by the defendant to accept Mrs. Ayres as the obligor in place of Breyfogle and free the latter from further liability on the mortgaged debt. Preliminary to the consideration of that question of fact we note that plaintiff contends that, as the substitution agreement was not in writing, that provision of the negotiable-instrument act relating to renunciation of rights against the principal debtor (R. S. 52-904), operates to prevent a substitution of obligors and a discharge of the original one. It is as follows:

"The holder may expressly renounce his rights against any party to the instrument before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor, made at or after the maturity of the instrument, discharges the instrument; but a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

Attention is called to the fact that the provision applies to negotiable instruments alone, and that from the record it appears that the note in question was not negotiable in form as it contained no words of negotiability, such as "to order" or "to bearer," and further, it is pointed out that it provided that the payee should do something besides pay the money, as it contained a provision that required of the defendants something more than the payment of money, and therefore it could not be regarded as a negotiable instrument. (R. S. 52-201, 52-205; *Bank v. Hoffman*, 85 Kan. 71, 116 Pac. 239.) It appears that the statute applies only to renunciation, and in any event it does not apply to a novation, such as the agreement to accept Mrs. Ayres as the new debtor for the old one and relieve Breyfogle from further liability on the debt. (*Jones v. Wettlin et al.*, 39 Wyo. 331; *Hall v. Wichita State Bank & Trust*

*Co.,* 254 S. W. 1036; *Farmers State Bank v. Cottingham,* 261 S. W. 426; *Gorin v. Wiley et al.,* 215 Ill. App. 541; *McGlynn v. Granstrom,* 169 Minn. 164; *Nelson v. Hudson,* 221 Mo. App. 211.)

The substitution agreement not being within the rule of the renunciation statute, the transaction in question was clearly the subject of contract between the parties, and if the contract made embodies the essential elements, including a legal consideration, it must be upheld. It is contended by plaintiff that there was no consideration for the substitution, but if plaintiff agreed to the substitution and accepted the assumption of Mrs. Ayres as a discharge of that of Breyfogle, it follows that the agreement is supported by sufficient consideration. If a person agrees to do an act freely made beneficial to another it will constitute a valid consideration. In *Bridges v. Vann,* 88 Kan. 98, 127 Pac. 604, where a creditor who held an obligation against his debtor agrees to and accepts in payment the obligation of a third party, equal in amount to that of the original debtor in pursuance of a business transaction between the two debtors, there is sufficient consideration to support the agreement. It was there said:

"It is enough if the obligee foregoes some right or privilege or suffers some detriment, and the release and extinguishment of the original obligation of George Vann, Sr., for that of appellants meets that requirement. Appellee accepted one debtor in place of another and gave up a valid, subsisting obligation for the note executed by appellants. This, of itself, is sufficient consideration for the new note. (Citing cases.)" (p. 101.)

In *Bacon v. Daniels,* 37 Ohio St. 279, which involves a novation where two parties to a contract entered into an agreement that one person be released from the contract and a third person substituted in his stead, as to the consideration, it was said:

"Like other contracts, the one in question requires a consideration to support its validity, but that consideration appears in the release of one party and the substitution of another. The existence of the contract being established, the consideration is self-evident." (p. 281.)

It is further objected that Mrs. Ayres was not present when the agreement was made, and further, that her assumption of the obligation was not coincident with the agreement or substitution. All were alike concerned in the transaction. Breyfogle sold and transferred the mortgaged real estate to Mrs. Ayres, who took it subject to the mortgage debt. In carrying out the intention of the parties she executed a written assumption of that obligation which the evi-

dence shows was accepted by the bank in accordance with the prior understanding of the parties. Substitution may be accomplished by either an express or an implied agreement. (*Insurance Co. v. Benner*, 78 Kan. 511, 97 Pac. 438; *Badders v. Checker Cab Co.*, 118 Kan. 125, 234 Pac. 41; *First Nat'l Bank v. Barnholdt*, 128 Kan. 377, 277 Pac. 1017; *Brown-Crummer Investment Co. v. Bankers Service Co.*, 130 Kan. 583, 287 Pac. 579.)

So far as the matter of time when the plaintiff agreed to accept the substitution of debtors is concerned, it is not important that it be done at the exact time of the agreement between the two debtors. In *McLaren v. Hutchinson*, 22 Cal. 188, a party named Beach was indebted to the plaintiff and several others for labor done on a farm. Beach sold the farm to the defendant, and as a part of the price the defendant agreed in writing with Beach to pay the plaintiff and other laborers the debt due them. Thereafter the plaintiff and other laborers agreed with the defendant to release Beach from the debts and look to plaintiff alone for their payment. The court said:

"Here is a mutual agreement by the parties interested, and it can make no difference that this mutual agreement was not perfected at the same moment of time, or that all were not present at the time of its completion. Beach and the defendant assented to it, when the agreement was signed and delivered, and the creditors afterwards assented when informed of the agreement by the defendant. Their assent to the agreement gave them a right of action against the defendant, and the case is not within the statute of frauds." (p. 190.)

It was not necessary to the validity of the substitution agreement that it should be reduced to writing. As said in *McLaren v. Hutchinson*, supra, the case of novation is not within the statute of frauds. The assumption of Mrs. Ayres was in writing and was sent to, and accepted by, the mortgage company in accordance with the terms of the prior agreement of the parties.

There remains the contention that the finding of the making of the substitution agreement was not supported by sufficient evidence. Several witnesses testified in behalf of defendant that the contract was actually made to accept Mrs. Ayres as obligor in lieu of Breyfogle and thus release Breyfogle from liability on the mortgage debt. It was made by Forrest Cave, the accredited agent of the mortgage company, in the presence of a number of people who gave testimony. Forrest Cave was the brother of M. W. Cave, the president of the mortgage company, had a desk in the headquarters of

that company, and had been intrusted with and performed duties which could only be done by one having general powers. Evidence was offered to show that he was authorized to make sales of the land of the mortgage company, to rent its lands to others, to repair buildings and attend to the making and handling of loans. After the novation contract was made a blank form of assumption, to be executed by Mrs. Ayres, was forwarded by the mortgage company to Breyfogle & Loftus to be executed by her. This blank, it appears, was lost, and George Breyfogle then prepared an assumption in typewriting which was signed by Mrs. Ayres and then forwarded to the head office of the mortgage company in Topeka, suggesting that if the form was not satisfactory to send one of their own printed forms and he would have that executed. No complaint of the form of assumption which had been sent to the company was made nor was any blank sent for execution. There was evidence that the assumption was received by the company and kept in its office. Mrs. Ayres' name was placed on the ledger of the company showing the loan in question over that of Breyfogle, and a red line was drawn through the name of Breyfogle, indicating that the substitution agreement had been made.

Defendant is contending that the contract could not have been made because Forrest Cave, who was acting for the mortgage company, was in another part of the state at the time, and was not at the office in Overland Park, where witnesses testified the contract was made. That question is settled by the finding and judgment of the court based upon what we deem to be sufficient evidence. That evidence tends to show that Forrest Cave was the authorized agent of the company, that he entered into the contract in question substantially as alleged by the defendant. The subsequent action of plaintiff tends to confirm the defendant's evidence respecting the time and place of the making of the contract and the terms thereof. After the contract was made, and there were delinquencies of payment by Mrs. Ayres, no demand for payments was made upon Breyfogle, but, on the contrary, notices of the delinquencies were sent to Mrs. Ayres, and she was otherwise treated as the sole obligor of the indebtedness. It appears that after the cancellation of Breyfogle's name on the ledger of the company an effort was made by plaintiff to get the Ayres loan upon a new and different basis.

A reading of the evidence satisfies us that the court reached a

correct conclusion in holding that the contract was made by one having authority, and as made operated to release the defendant from liability on the indebtedness.

The judgment is affirmed.