No. 46,511

BERTRAM E. DAVENPORT, Trustee for the GLADYS A. DAVENPORT TRUST, *Appellant,* v. DALE E. DICKSON, *Appellee,* and ROBERT L. ARD, *Defendant.*

(507 P. 2d 301)

Opinion filed March 3, 1973.

*Stephen Jones,* of Lyndon, argued the cause, and *David Hederstedt,* also of Lyndon, was with him on the brief for the appellant.

*Arthur L. Claussen,* of Topeka, argued the cause, and *R. Wilford Riegle,* of Emporia, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This action was brought to recover the balance due on a promissory note executed by Dale E. Dickson, and which Robert L. Ard assumed and agreed to pay in a separate written instrument. Dickson set up the defense of novation based on the separate written instrument signed by Ard. Ard set up a defense of failure of consideration for his agreement to assume the debt. The defendant Dickson in his answer to plaintiff's petition pled that the written instrument entitled "Memorandum of Stock Sale," which will hereafter be copied in full, constituted the novation. During the trial he neither relied upon nor attempted to introduce parol testimony to prove that he understood he would be released from his obligation on the note in exchange for the obligation of Ard under the memoradum.

The case was submitted to a jury on two special questions: (1) Was there a novation? (2) Was there a failure of consideration? The jury answered both questions in the affirmative and the trial court entered judgment against the plaintiff which judgment had the effect of releasing both Dickson and Ard from any liability on the note. The holder of the note appeals.

In order to examine the questions raised on appeal the factual background must be given.

The plaintiff trustee is the present legal holder of the promissory note in question. He obtained title by transfer from the original payees. No question is raised concerning ownership, and the trustee now stands in the shoes of his parents, Henry J. and Gladys A. Davenport. The Davenports owned and managed the Davenport Equipment Company, an incorporated retail farm equipment business in Osage City.

In 1963 the business was sold by the Davenports to Dale E. Dickson and Roe E. Borsdorf under a written sale agreement. The Davenports completely withdrew from the business and the two purchasers took over the operation and management. All shares of stock in the corporation were assigned to the purchasers. The purchasers executed separate promissory notes to cover their share of the purchase price of the business. The Borsdorf note has since been paid in full. The Dickson note dated January 19, 1963, is the basis of the present action. It obligated Dickson to pay the principal sum of $9,855.20 in monthly installments of $100.00 principal plus interest over a period in excess of 8 years with prepayment privileges. The note was secured by the pledge of Dickson's shares of corporate stock and an account receivable of the company. The certificates of stock were placed in the hands of an attorney, Harry T. Coffman, who was given a power of attorney by Dickson and the Davenports to carry out the terms of the pledge. In event of default the entire remaining balance on the note became due and payable at the holder's option.

Dickson made regular payments on his note until December, 1965, at which time there remained due a balance of principal of $6,703.41. No further payments were made by Dickson.

In April, 1967, when some seventeen monthly payments were in default Dickson negotiated for the sale of his interest in the business to Robert L. Ard. The business was in financial straits. Ard was a mechanic working for the company. On April 22, 1967, a meeting was held in the company office. Those in attendance were Dale E. Dickson, Roe E. Borsdorf, Robert L. Ard, Bertram E. Davenport, Harvey Davenport, Gladys A. Davenport and Harry T. Coffman, an attorney representing Gladys Davenport. The proposed sale of Dickson's interest to Ard was discussed and a written memorandum was signed. This memorandum which is alleged to have effected a novation is as follows:

"Memorandum of Stock Sale

"4-22-67

"Whereas, the unpaid principal balance of the undersigned Dale E. Dickson's 1-19-1963 $9,855.20 note to Mr. or Mrs. Henry J. Davenport or the survivor of them (Mrs. D.) is $6703.41 and the interest is unpd since 12-19-1965; the $11,138.28 acc't receivable by the Davenports from Davenport Equipment Company is not paid and no interest has been paid thereon and the 43 shares of seller Dale E. Dickson's stock in the company is encumbered only by its pledge to secure the payment of said 1-19-1963 note; and there are 63 shares of stock owned by Roe E. Borsdorf, the only other stockholder;

"Now, therefore, in consideration of these mutual covenants—the parties agree—

"1. Dale E. Dickson & wife Ann will forthwith resign from the Board of Directors of the company and Dale will resign from the office of President.

"2. Dale E. Dickson will assign his 43 shares of stock to the undersigned Robert Ard, who assumes the obligation of said note and will pay the balance of it (Principal and interest) if Mrs. Davenport will let him pay the interest to date and resume payment of the balance on a $100—per month pr + interest schedule.

"3. Dale E. Dickson assigns his interest in said $11,138.28 account to Robert Ard subject to the dedication of it to pay the note—all per the 1-19-63 contract and pledge.

"Approved 4-22-67                           /s/  Dale E. Dickson
/s/  Mrs. Gladys Davenport          /s/  Robert L. Ard"

Robert L. Ard thereafter made two payments to Gladys A. Davenport, who was the owner and holder of the Dickson note during that time. In May, 1967, a payment on the note of $445.89 was credited against the past due interest and in June, 1967, a payment of $127.46 was credited to principal and interest. A schedule of payments had been kept on the Dickson note from its inception, and these last two payments by Ard were endorsed or credited on the Dickson note schedule to reduce the running balance due on the note to $6,603.41. No new note was executed by Ard and the note of Dickson was never marked released or cancelled. Thirty to sixty days after the transfer of shares in the business from Dickson to Ard the principal wholesale supplier for the company repossessed all of the equipment in stock. At this time it appears the liabilities of the corporation exceeded its assets and the business was closed within a year thereafter. Demand for payment of the note was made upon both Dickson and Ard in August, 1968, and the present action was filed in October, 1968.

The appellant Davenport contends as a matter of law the written memorandum of stock sale signed by Dickson and Ard did not release Dickson on his note and it was error to submit the question

of novation to the jury. The appellee Dickson contends otherwise.

A novation, as recognized in the law of contracts, is either the substitution of a new debt or obligation for an existing one which is thereby extinguished, or it is the substitution by mutual agreement of one debtor or one creditor for another where the old debt is extinguished. In either case the old debt must be extinguished. (Anno: Novation—What Constitutes, 61 A. L. R. 2d 759. For Kansas cases see *Insurance Co. v. Brenner,* 78 Kan. 511, 97 Pac. 438; *Bridges v. Vann,* 88 Kan. 98, 127 Pac. 604; *Smith v. Investment Co.,* 112 Kan. 201, 210 Pac. 477; *Badders v. Checker Cab Co.,* 118 Kan. 125, 234 Pac. 41; *First Nat'l Bank v. Barnholdt,* 128 Kan. 377, 277 Pac. 1017, and *Bankers Mortgage Co. v. Breyfogle,* 136 Kan. 362, 15 P. 2d 440.)

A novation may occur by substituting a new obligation or note for an existing obligation and releasing the obligation which previously existed. (*First Nat'l Bank v. Barnholdt,* supra.) In such case the parties remain the same but the old obligation is extinguished.

A novation may also occur where a creditor who held an obligation against his debtor agrees to and accepts in payment the obligation of a third party. (*Bankers Mortgage Co. v. Breyfogle,* supra.) In such case both the parties and the obligation change and the old obligation is extinguished.

An essential element of novation is that there must be a release of all claim of liability against the original debtor on the old obligation, since it is possible for a creditor, accepting a new debtor as an additional debtor, to hold the original debtor still liable. (66 C. J. S., Novation, § 20, p. 709; 58 Am. Jur. 2d, Novation, § 22, p. 536; 61 A. L. R. 2d, p. 768, Anno. § 3.) A creditor's assent to hold a new debtor liable is ineffective to constitute a novation unless there is assent to give up the original debtor. A novation is never presumed, and the burden is on the party asserting it to establish the essential requirements. (66 C. J. S., Novation, § 26, p. 714; 58 Am. Jur. 2d, Novation, § 20, p. 534.) The controlling element with respect to the existence of a novation is the intention of the parties, and unless there is a clear and definite intention on the part of all concerned to extinguish the old obligation by substituting the new one therefor, a novation is not effected. (*Insurance Co. v. Benner,* supra; *Badders v. Checker Cab Co.,* supra; *First Nat'l Bank v. Barnholdt,* supra.) The mere fact that a creditor,

with knowledge of the assumption by a third party of his debtor's obligation, consents thereto, does not amount to a novation releasing his original debtor or extinguishing the original debt. In 6 Corbin on Contracts, § 1301, p. 228, it is said:

"Frequently an assignee of contract rights undertakes to perform the assignor's duties also. This is not operative as a novation, since the assignor remains bound by those duties so long as his creditor does not accept the assignee's new promise in lieu of the duty of the assignor. The creditor's actually receiving a payment or other part performance from the assignee, knowing that he has undertaken to perform, is not an assent to a novation discharging the assignor unless the assignee's performance is tendered not merely as a satisfaction pro tanto of the assignor's duty but also on condition that the assignor shall be discharged from any further duty. In like manner, the creditor's written expression of assent does not operate as a discharge of his debtor by novation where he has merely been notified that an assignment of contract rights has been made and that the assignee has assumed the performance of the assignor's duties. Such an assumption merely gives to the creditor an additional security. His expression of assent does not go beyond this, unless the notice to which he assents is clearly a proposal for a substitution of debtors instead of a mere assumption of duty by the assignee. The question is one of reasonable interpretation."

A creditor's acceptance of a note of a third party who becomes obligated to pay the debt owed by the debtor is not of itself evidence of an agreement to discharge the debtor from his obligation. There must be an agreement expressed or implied to do so. A novation constitutes a new contractual relation and must be based upon an obligation or contract. As such the general rules governing the relevancy and materiality of evidence in contract actions apply to actions involving contracts of novation. (66 C. J. S., Novation, § 26, p. 714; 58 Am. Jur. 2d, Novation, § 30, p. 541.)

If the intention of the parties to a transaction claimed to effect a novation is not expressed in a written instrument, or reduced to writing, the existence of such agreement and the intention of the parties must depend upon oral testimony. In such case the existence of a novation is a question of fact for the jury. (*Insurance Co. v. Benner,* supra; *Badders v. Checker Cab Co.,* supra; *First Nat'l Bank v. Barnholdt,* supra; *Credit Bureaus v. Cox Brothers,* 207 Or. 253, 295 P. 2d 1107, 61 A. L. R. 2d 750.)

When the parties to a transaction which is claimed to have constituted a novation have expressed their intentions as to the corresponding obligations of the parties in a clear and unambiguous written instrument the intention of the parties depends upon a

construction of the written instrument and is a question of law for the court. (66 C. J. S., Novation, § 26c, p. 716; 58 Am. Jur. 2d, Novation, § 30, p. 541.)

In *Wood v. Hatcher,* 199 Kan. 238, 428 P. 2d 799, it is said:

"Language in a contract is not ambiguous unless the words used to express the meaning and intention of the parties are insufficient in a sense the contract may be understood to reach two or more possible meanings." (Syl. ¶ 1.)

When an agreement in writing is clear and unambiguous in its terms the intention of the parties to the agreement is to be determined by the court by construing the instrument as a whole, after considering the legal effect of all language therein. Construction of the terms of a written agreement does not authorize modification beyond the meaning expressed by the language used by the parties. A court may not make a new contract or rewrite the same under the guise of construction. (*Wood v. Hatcher,* supra; *Kittel v. Krause,* 185 Kan. 681, 347 P. 2d 269; *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803.)

In the present case the contract alleged to effect a novation was reduced to writing in the presence of all parties affected by the transaction. It was signed by the old and new debtors and it was approved by the creditor.

Neither party to this appeal points to any ambiguity or uncertainty in the verbiage used by the parties to express their intentions. Both contend in certain portions of their briefs, at least, that the trial court was correct in excluding the oral testimony offered by appellant to prove that Dickson was advised he was not being released from liability on the note. As previously noted Dickson did not offer testimony that he was to be released on his obligation. He testified that "he never received any document from the Davenports releasing him from his obligation". He further admitted "the original of his promissory note was never returned to him or marked 'cancelled', and he did not request its return."

The trial court in its pre-trial memorandum listed one of the *issues of law* to be determined as: "Did the Memorandum of Stock Sale release defendant, Dickson?" However, at the trial this question was submitted to the jury as a question of fact and, we believe, erroneously so.

The general rule as to the admissibility of parol evidence applies in this case. When a contract is complete, unambiguous and free from uncertainty, parol evidence of prior or contemporaneous agree-

ments or understandings, tending to vary or substitute a new and different contract for the one evidenced by the writing is inadmissible. (*Brown v. Beckerdite,* 174 Kan. 153, 254 P. 2d 308; *Williams v. Safeway Stores, Inc.,* 198 Kan. 331, 424 P. 2d 541.) The construction of the written instrument was, therefore, a question of law for the trial court under the rule of *Wood v. Hatcher,* supra.

The memorandum of stock sale provided that Ard would assume the obligation of the Dickson note. In return for which Dickson was to do several things: (1) resign as president and as director of the corporation, (2) assign his 43 shares of pledged stock in the corporation to Ard, and (3) assign his interest in the pledged account receivable to Ard. These promises, as expressed in the memorandum, were to be on a condition, "if Mrs. Davenport will let him [Ard] pay the interest to date and resume payment of the balance on a $100—per month pr [principal] + [plus] interest schedule". The final statement in the writing is "all per the 1-19-63 contract and pledge." The 1-19-63 contract and pledge provided for the Dickson note.

Clearly the agreement contained nothing which could be construed to release Dickson from his obligation on the note unless the assumption of the obligation by Ard had that effect. As previously indicated in the authorities cited, the assumption of the obligation by Ard does not have that effect absent an agreement by the creditor to extinguish the old obligation.

The question is asked, what is the purpose for the signature of Mrs. Gladys Davenport? Obviously the note was in default and Dickson's rights to the stock in the corporation and the account receivable were subject to being foreclosed under the terms of the pledge. The assignment of Dickson's rights had to be conditioned on obtaining permission from Mrs. Davenport for Ard to pay the accrued interest and resume the $100.00 per month principal payments without the threat of foreclosure. Her signature on the memorandum gave that permission.

In order for the memorandum of stock sale to effect a novation it had to contain a provision releasing the obligation of Dickson on the note and it did not do so. Accordingly we hold that the trial court was correct in excluding the proffered testimony of Borsdorf, Davenport and Coffman to the effect that Dickson was advised before signing the memorandum he was not being relieved of liability on the note. However, we hold the trial court erred in submitting

the question of whether the memorandum constituted a novation to the jury as an issue of fact. As we construe the written memorandum it did not release the obligation of Dickson on the note or constitute a novation. It was approved and accepted by Mrs. Davenport as a mere collateral security and was not a substituted contract.

Now as to the judgment in favor of Ard, the matter of failure of consideration was submitted to the jury. On reviewing the record on appeal it has not been made to appear to this court that prejudicial error occurred in the trial on that issue, and the judgment in favor of Ard is affirmed. (Hatcher's Kansas Digest [Revised Edition], Vol. 1-3 Supplement, Appeal and Error, § 408.)

The judgment in favor of Dale E. Dickson is reversed, the case is remanded to the trial court with instructions to determine the amount due on the note and enter judgment in favor of the appellant and against Dale E. Dickson on appellant's motion for directed verdict.