No. 47,185

Robert D. Elliott, *Appellant,* v. W. F. Whitney, d/b/a Whitney Aviation, *Appellee*

(524 P. 2d 699)

filed July 17, 1974. Opinion

*Robert G. Frey,* of Frey and Smith, of Liberal, argued the cause and was on the brief for the appellant.

*Eugene L. Smith,* of Smith and Greenleaf, of Liberal, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMON, C.: This is an action for breach of an oral contract of sale of a crop dusting airplane and related oral contracts for lease-back of the plane and conducting crop dusting services. By way of summary judgment the trial court ruled that a subsequent written agreement, rather than the parties' oral agreements, governed their rights upon defendant's breach of the written agreement. Plaintiff appeals from the judgment rendered upon the determination. Essentially the issue is whether the written agreement constituted an executory accord rather than a novation or substituted contract.

In rendering its decision the trial court had before it plaintiff-appellant's petition, defendant-appellee's answer, certain admissions and stipulations of fact. Appellant's petition contained these allegations:

"2. That on or about the 12th day of April, 1972, in Liberal, Seward County, Kansas, Plaintiff and Defendant entered into an oral agreement wherein Defendant on his part agreed to sell to Plaintiff a Boeing Model A 75 NI crop dusting aircraft for $15,000.00 to be paid over a three year period. Further, Defendant agreed to lease from Plaintiff said airplane and the Plaintiff's services as a pilot for the 1972 crop dusting season; to give Plaintiff first priority on all spraying jobs acquired by Defendant, d/b/a Whitney Aviation in the 1972 crop dusting season; to furnish to Plaintiff all chemicals necessary at Defendant's cost; to furnish ground crew and to pay Plaintiff One Dollar ($1.00) per acre for each acre sprayed. Further, Defendant agreed to allow Plaintiff to hangar his airplane in the Whitney Aviation hangar at no cost.

"3. In consideration of Defendant's promise, Plaintiff on his part agreed to spray all acreage on a first priority basis for Defendant, d/b/a Whitney Aviation for One Dollar ($1.00) per acre; to pay Twenty Cents (20¢) per acre to Defendant for payment on said airplane; to supply all gasoline and oil for said airplane on all spraying jobs and to furnish all insurance on said airplane.

"4. Plaintiff on his part has duly performed all the terms and conditions of said agreement by him to be performed.

"5. Defendant has failed and refused to perform said agreement in that Defendant failed to give Plaintiff first priority on all spraying done in the 1972 season by Whitney Aviation, and in so doing, deprived Plaintiff of approximately 12,000 acres of spraying jobs in the 1972 season. Of the 12,170 acres sprayed by Plaintiff for Defendant, Defendant has failed to pay to Plaintiff a total of $4,209.00 yet remaining due. Defendant has further failed to allow

credit for payment on the above mentioned airplane in the amount of $4,834.00.

"6. By reason of the breach by Defendant, Plaintiff has sustained damages in the sum of $17,816.00."

## Appellee's answer contained the following:

"2. Defendant further admits the sale of an airplane to Plaintiff for the sum of $15,000, and that the Plaintiff and Defendant from time to time during the spring, summer and fall of 1972 had many discussions concerning payment for said airplane, compensation for spraying services, and other business arrangements between the parties.

"3. Defendant alleges that at the end of the 1972 crop spraying season each party was indebted to the other and that in order to resolve their differences concerning the effects of several previous discussions and alleged oral or written contracts, the parties entered into a written agreement dated October 6, 1972, a copy of which is attached hereto as Exhibit 'A'.

"4. Defendant further alleges and states that if Plaintiff has any claim existing against this Defendant arising from the matter set forth in Plaintiff's petition, the same arises from the said agreement of October 6, 1972, which agreement extinguished and terminated all prior agreements between the parties.

"5. Defendant further states that he has heretofore offered to pay to Plaintiff and now stands ready, willing and able to pay to Plaintiff all sums due or to become due under the agreement of October 6, 1972, and hereby offers a tender of all such sums into Court to abide the order of the Court interpreting, enforcing, and requiring compliance of the parties with the provisions of said agreement."

## Exhibit A, referred to in appellee's answer, is as follows:

"AGREEMENT

"This agreement made this 6th day of October, 1972, by and between Wm. F. Whitney and Robert D. Elliott, witness:

"Whereas the parties have heretofore entered into business arrangements and oral agreements concerning spraying aircraft sales, commissions, spraying service and payment and compensation therefore and certain disputes and difficulties have arisen between the parties as a result of such prior association, arrangements and agreements and

"Whereas the parties are desirous of settling all such disputes, and all accounts and matters pending between them,

"Now, therefore the parties agree as follows:

"1. Whitney agrees to pay Elliott the sum of $3417.68 in the following manner, to-wit:

"$500.00 simultaneously with the execution hereof $500.00 on the first day of November, 1972 and a like payment on the first day of each month following until the total sum is paid in full.

"2. Elliott will execute and deliver into escrow a properly executed bill of sale to a certain Stearman aircraft, Registration No. N5046V, Serial No. 756-711.

"3. The parties designate the Citizens State Bank of Liberal, Kansas, as escrow agent, to safely keep and hold the bill of sale and to receive and disburse all payments to be made hereunder, except the initial $500.00 payment, and when all such payments are made, to deliver the bill of sale to Whitney.

"Each of the parties hereby releases and absolves the other from any and all liability arising out of any business association or agreement heretofore made between the parties.

"It is hereby stipulated that any and all liability for any insurance premiums which may be due on the above described aircraft covering the 1972 spray season are the sole responsibility of Elliott, who hereby agrees to hold Whitney harmless from any claim, demand or obligation therefore."

Execution of this agreement was admitted by appellant Elliott and appellee made the initial payment to him as called for in that instrument. Shortly thereafter it appears that an insurance agency filed suit against appellant because of appellant's failure to pay past due insurance premiums on the aircraft title to which he was to receive from appellee. In an apparent attempt to shift liability in that suit appellant sought to have appellee brought into that action as a third party defendant. Appellee then declined to make further payments to appellant pursuant to the October 6th agreement whereupon appellant commenced this proceeding.

In the present action the parties stipulated, prior to the rendition of judgment, that appellant's obligation to hold appellee harmless from any liability for insurance premiums pursuant to the last paragraph of their October 6th agreement was appellant's continuing responsibility and further that actual payment thereof by appellant was not a condition precedent to appellee's obligation to pay the installments called for in paragraph one of that agreement.

In entering summary judgment for appellee the trial court ruled that the October 6, 1972, writing was a valid, binding contract and it assessed damages against appellee only for its breach, conceded by the parties to be the amount of the delinquent payments called for therein plus interest, rather than for damages allegedly resulting from breach of the prior oral agreements as claimed by appellant. In effect the trial court ruled that the written agreement was a novation rather than executory accord.

Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished (66 CJS, Novation, § 1). It is a new contractual relation which has four requisites: A previous valid obligation, the parties must agree to the new contract, the new contract must be valid and the old obligation must be extinguished by the substitution for it

of the new one (15 Williston on Contracts, 3d ed., § 1869; 66 CJS, Novation, § 3).

An executory accord has been defined in the following manner:

"The term 'accord executory' is and always has been used to mean an agreement for the future discharge of an existing claim by a substituted performance. In order for an agreement to fall within this definition, it is the promised performance that is to discharge the existing claim, and not the promise to render such performance." (6 Corbin on Contracts, § 1268, p. 71.)

The distinction between a novation and an executory accord becomes significant in event of breach of the new agreement. If the new agreement constitutes a novation, a breach does not revive the discharged claim and the parties' rights are controlled by the new agreement (6 Corbin on Contracts, § 1293; 66 CJS, Novation, § 24).

On the other hand the effect of a breach of an executory accord is stated in the following:

"Since an accord executory operates at best no more than as a suspension of the antecedent claim, a material breach of the accord by the debtor lifts the suspension and makes the creditor's prior claim again enforceable." (6 Corbin on Contracts, § 1275, p. 111.)

The eminent author just cited pinpoints the problem at hand in this fashion:

"It is frequently difficult to determine whether a new agreement is a substituted contract operating as an immediate discharge, or is an accord executory the performance of which it is agreed shall operate as a future discharge. It is wholly a question of intention, to be determined by the usual processes of interpretation, implication, and construction." (6 Corbin on Contracts, § 1293, p. 190.)

In *Davenport v. Dickson*, 211 Kan. 306, 507 P. 2d 301, we had this to say respecting novation:

"When the parties to a transaction which is claimed to have constituted a novation have expressed their intentions as to the corresponding obligations of the parties in a clear and unambiguous written instrument the intention of the parties depends upon a construction of the written instrument and is a question of law for the court." (Syl. ¶ 9.)

Finally, we note the following respecting the intention to create novation:

"While . . . the intention to accomplish a novation need not be by express agreement to that effect, but may be inferred, like any other contract, from the facts, circumstances, and conduct of the parties, in order for a subsequent contract to constitute a novation and discharge of a prior one by implied intention of the parties, ordinarily it must appear that the new contract is so radically different from the old one that it necessarily supersedes it as an entirety." (66 CJS, Novation, § 11 b. (1), pp. 692-693.)

Applying the fundamental rule that the intention of the parties to a contract is to be determined from the plain, general and common meaning of the words used by them in their contract (*Duffin v. Patrick*, 212 Kan. 772, 512 P. 2d 442) we have no difficulty in concluding the parties here intended that which amounts in law to novation or a substituted contract. Appellant acknowledges that a previous valid agreement existed between the parties and that they agreed to the terms of the new contract. There is no question of fraud or mistake in its execution and its validity is not challenged in any way. The only remaining question is whether the parties intended thereby to extinguish the old contract by the substitution of the new one. They said so in clear and unambiguous language:

"Each of the parties *hereby* releases and absolves the other from any and all liability arising out of any business association or agreement heretofore made between the parties." (Our emphasis.)

The plain and ordinary meaning of the term "hereby" as used above can only be "by or through this document" or "by means of this document." That the intent expressed therein was to discharge all prior obligations upon execution of the written agreement is further borne out by comparison of the terms of the oral agreement as alleged in appellant's petition with those of the October 6th agreement—they are quite different. The latter clearly evidenced the parties' intent thereby to settle and adjust all disputes existing between them and it must be upheld.

There was no genuine issue as to any material fact in the case and the trial court properly entered summary judgment as a matter of law.

Judgment affirmed.

APPROVED BY THE COURT.