**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for College Boulevard National Bank, Plaintiff,**

v.

**Saul ELLIS and Saul Ellis and Company, Inc., Defendants.**

**No. 96–2219–JWL.**

United States District Court,
D. Kansas.

June 25, 1997.

---

David C. Stout, Chionuma & Associates, P.C., Kansas City, MO, for Plaintiff.

Larry Winn, III, Diane P. Duvall, Polsinelli, White, Vardeman & Shalton, Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this action, the Federal Deposit Insurance Corporation (FDIC), acting as receiver for a failed bank, seeks to recover from defendants on three notes and the corresponding guaranties and to foreclose on a mortgage securing one of the guaranties. The matter is presently before the court on the FDIC's motion for summary judgment (Doc. 21). For the reasons set forth below, the court grants the motion and orders judgment in favor of the FDIC.[1]

### I. Facts

On April 2, 1993, College Boulevard National Bank (the Bank), located in Overland Park, Kansas, was declared insolvent. On that day, the FDIC was appointed receiver

---

1. Because it concludes in its discretion that oral argument on this motion would not be helpful, the court denies the FDIC's request for such argument. *See* D. Kan. Rule 7.2.

for the bank and succeeded to any claims held by the Bank.

Defendant Saul Ellis is a residential real estate developer. Mr. Ellis is president and CEO of defendant Saul Ellis and Company, Inc. (the Company).

On July 19, 1991, Mr. Ellis, in his individual capacity, executed a note in favor of the Bank in the principal amount of $170,000 (the $170,000 note). The note was payable on demand. At the same time, the Company, through Mr. Ellis, executed a guaranty in the full amount of the note. The company also executed a mortgage on certain real estate in favor of the Bank to secure its guaranty, which mortgage was duly filed and recorded. On April 2, 1996, the FDIC made written demand on defendants for payment of amounts due on the note. Assuming the note is still in force, $114,461.84 in principal and interest is due on the note as of March 14, 1997, with interest accruing after that date at the rate of $24.118 per day until paid.

On November 19, 1992, Mr. Ellis, in his individual capacity, executed a second note, payable on demand, in favor of the Bank in the principal amount of $480,000 (the $480,000 note). Again, the Company guaranteed Mr. Ellis's indebtedness on the note. The FDIC made demand on defendants with respect to this note on April 2, 1996. Assuming the note is still in force, $847,200.00 in principal and interest is due on this note as of March 14, 1997, with $240.00 per day in interest accruing thereafter.

On October 1, 1993, as part of a "workout" of two prior loans not at issue here, the Company executed a note in favor of the FDIC in the principal amount of $260,000 (the $260,000 note). The note was due in full on October 1, 1995. At the same time, Mr. Ellis, in his individual capacity, executed a guaranty for the note. Demand was made on April 2, 1996. As of March 14, 1997, $329,354.88 in principal and interest is due on this note, plus interest of $64.236 per day thereafter.

In 1993, the parties also began to negotiate a "workout" of the $170,000 note and the $480,000 note. On February 18, 1994, Jack McCullagh, an FDIC case specialist, submit-

ted a case proposal to the Chairperson of the FDIC's Senior Credit Review Committee. The proposal stated as follows:

Authorization is requested to consent to:

1. Waive default interest on [the $480,000 note], currently in the amount of $95,-040 and on [the $170,000 note] in the amount of $2,663.36, and combine the principal balance of the two notes totalling $564,700.

2. Renew the note for two years at prime plus 1% interest payable interest only quarterly, with principle [sic] to be reduced by collateral sales.

3. Secure the renewed note with a lien on 16 or more lots in the Timbers Edge Subdivision Phase II with a value of $30,000 per lot and two lots from the Foxborough Subdivision valued at $76,-000.00, for a total value of $556,000.

The proposal further noted that the FDIC would benefit by "securing a note that is currently unsecured." The Chairperson approved the case proposal on March 8, 1994.

What happened next is subject to dispute. Mr. McCullagh testified that, after a case proposal was approved, the FDIC would normally notify the debtor and attempt to close the transaction with the execution of a note, collateral pledge, and mortgage. According to Mr. McCullagh, however, in this case the deal was never consummated because Mr. Ellis did not succeed in securing the note with the promised mortgages. Mr. McCullagh testified that Mr. Ellis did not close the transaction after learning of the approval of the case proposal.

Mr. Ellis agreed that no liens had been placed on the various lots, but he testified that Mr. McCullagh knew and understood that there would be a "time gap"—that no liens in favor of the FDIC would be recorded until the lots were free and clear of the their prior mortgages. Mr. Ellis also stated that he signed a combined note, but that he did not keep a copy of the note, which was then returned to the FDIC. Mr. Ellis conceded in his testimony that he did not know and could not recall when he signed the note; how many pages the note contained; whether the note referred to a time gap regarding the

liens; who drafted the note; whether he signed the note in his individual capacity or on behalf of the Company; or whether the note included a guaranty. Mr. Ellis has not produced a combined note, and he admitted that he had never seen any documents containing a new, different identification number for the combined loan.

The FDIC has been unable to locate any combined note. In its normal practice, the FDIC would create a new identification number for a combined note; however, a computer search has revealed no new identification number reflecting a combined note.

The FDIC filed the instant suit on May 6, 1996. In six different counts, the FDIC seeks to recover on the three notes and three guaranties. The FDIC also seeks judicial foreclosure of the real estate securing the guaranty on the $170,000 note.

## II. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anthony v. United States*, 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir.1994) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

## III. Discussion

Defendants have not contested summary judgment on the FDIC's claims relating to the $260,000 note and guaranty. Accordingly, summary judgment is granted in favor of the FDIC on those claims, and judgment is awarded against each defendant for the full amount of principal and interest due on that note.

In opposing summary judgment on the other claims, defendants argue, as their only defense, that the FDIC cannot enforce the $480,000 note, the $170,000 note, or the corresponding guaranties because a combined note was substituted for those obligations. The court concludes, however, that defendants have not provided sufficient evidence of a valid new contract superseding the old notes and guaranties, and the FDIC is therefore entitled to summary judgment on its claims to enforce those obligations.

■ Defendants first argue that summary judgment is precluded by the FDIC's statement in a footnote in its brief that "because Ellis testified he executed [a combined] note, for purposes of this Motion only the FDIC will assume such a note was executed by Ellis." Defendants' argument is without merit. It is clear from the brief that the FDIC has merely recognized that the court, in accordance with the applicable summary judgment standard, must view the evidence in the light most favorable to defendants and so accept Mr. Ellis's statement that he signed a note. The FDIC has not conceded that such evidence is sufficient to establish the elements of defendants' substituted contract defense for summary judgment purposes.

■ In fact, the court concludes that defendants' evidence is not sufficient in this regard. Invocation of the substituted contract defense under Kansas law requires a showing of the following elements:

(1) a previous valid contract; (2) agreement on a new contract; (3) validity of that new contract; and (4) intent to extinguish the old contract and substitute the new.

*Barbara Oil Co. v. Kansas Gas Supply Corp.*, 250 Kan. 438, 454, 827 P.2d 24 (1992) (citing *Elliott v. Whitney*, 215 Kan. 256, 524 P.2d 699 (1974)), *quoted in Comeau v. Mt. Carmel Med. Ctr.*, 869 F.Supp. 858, 862

(D.Kan.1994).[2] The party asserting the existence of a substituted contract bears the burden of establishing the required elements. *See First National Bankshares of Beloit v. Geisel,* 853 F.Supp. 1344, 1353 (D.Kan.1994) (novation under Kansas law is an affirmative defense); *Davenport v. Dickson,* 211 Kan. 306, 310, 507 P.2d 301 (1973) ("A novation is never presumed, and the burden is on the party asserting it to establish the essential requirements.").

 Defendants have not presented sufficient evidence establishing that the note signed by Mr. Ellis represented a valid new contract taking the place of the old notes and guaranties. The court is guided by the following standard set forth by the Tenth Circuit:

> Under Kansas law in order for an agreement to be binding, it must be sufficiently definite as to its terms and requirements as to enable a court to determine what acts are to be performed and when performance is complete. The court must also be able to fix definitely the liability of the parties.

*National Farmers Org. v. Kinsley Bank,* 731 F.2d 1464, 1470 (10th Cir.1984) (quoting *Butler v. Westgate State Bank,* 3 Kan.App.2d 403, 408, 596 P.2d 156 (1979)). An open term does not necessarily render a contract unenforceable, but only "if some method of determination [of that term] independent of a party's mere 'wish, will, and desire' exists, either by virtue of the agreement itself or by commercial practice or other usage or custom." *Id.* (quoting *Butler,* 3 Kan.App.2d at 408–09, 596 P.2d 156).

Under this standard, defendants have not established the existence of a valid, enforceable contract consisting of the combined note signed by Mr. Ellis because they have not presented any evidence concerning the proper party to that contract. It is undisputed that Mr. Ellis did not know whether he signed the combined note in his individual capacity or on behalf of the Company; thus, the court cannot "fix definitely the legal liability of the parties" because there is no evidence to establish whether Mr. Ellis or the Company is the maker of—and so liable on—the note. In the absence of such term, the contract is not enforceable, and defendants have thus failed to establish one element for its substituted contract defense.

Defendants argue that the court may just assume that, because Mr. Ellis made the $480,000 note and the $170,000 note in his individual capacity, with the Company acting as guarantor, a similar arrangement attended the making of the combined note. Such arrangement may not be discerned from the agreement itself, of which there is no evidence save Mr. Ellis's testimony. Nor have defendants offered any evidence that the proposed arrangement comports with commercial practice or custom. This very case, in fact, involves loans both with Mr. Ellis as maker and the Company as guarantor and with the roles reversed. Accordingly, because defendants have not offered evidence of how the liability of the parties should be fixed, they have failed to establish a valid contract.

 The note fails as a valid new contract for a second reason. The Kansas statute of frauds requires that guaranties be in writing. K.S.A. § 33–106. Moreover, "under Kansas law, when the original contract is within the Statute of Frauds, a modification of the contract cannot be enforced unless it, too, is writing." *Reno v. Beckett,* 555 F.2d 757, 763 (10th Cir.1977) (citing *Riffel v. Dieter,* 159 Kan. 628, 157 P.2d 831 (1945)). Defendants assert that the new note signed by Mr. Ellis replaced the notes and guaranties for the two previous loans. Such a modification of the two guaranties, however, required a writing, and defendants have not provided the actual note. Therefore, the note, supported only by parol evidence, is not enforceable under the statute of frauds as a substituted contract. See Restatement (Second) of Contracts § 279 cmt. b (1981) ("If the substituted contract is unenforceable because of the Statute of Frauds, it does not bar enforcement of the original duty.").

---

**2.** As this court noted in *Comeau,* Kansas courts have often referred to substituted contracts as novations. 869 F.Supp. at 863 n. 4. The elements of the two doctrines are identical except for the presence in a novation of a new party. Restatement (Second) of Contracts § 279 (1979).

■ The court rejects defendants' argument that the approved case proposal may serve as the necessary writing. First, there is no evidence that the proposal constituted the new contract. Mr. McCullagh's testimony that the proposal only authorized him to execute a contract is not controverted by evidence supplied by defendants, and Mr. Ellis testified that he actually signed a note in order to consummate the transaction. Second, the case proposal does not refer to any guaranties whatsoever and so cannot supply the required written evidence of a modification of the Company's two guaranties.

Accordingly, defendants have not established their substituted contract defense, and the FDIC may enforce the original obligations. Summary judgment is therefore appropriate in favor of FDIC in the amounts stated above.[3] The FDIC is also entitled to a judgment of foreclosure of the mortgage securing the Company's guaranty regarding the $170,000 loan. The FDIC is instructed to submit to the court a proposed order of foreclosure, consistent with this Memorandum and Order, on or before July 3, 1997. Defendants shall have until July 11, 1997, to file any written objection to the proposed order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the FDIC's motion for summary judgment (Doc. 21) is granted. Judgment is ordered in favor of the FDIC as follows:

(1) on Count I, against defendant Saul Ellis in the amount of $847,200.00, plus interest after March 14, 1997, at the rate of $240.00 per day until paid;

(2) on Count II, against defendant Saul Ellis and Company, Inc. in the amount of $847,200.00, plus interest after March 14, 1997, at the rate of $240.00 per day until paid;

(3) on Count III, against defendant Saul Ellis in the amount of $329,354.88, plus interest after March 14, 1997, at the rate of $64.236 per day until paid;

(4) on Count IV, against defendant Saul Ellis and Company, Inc. in the amount of $329,354.88, plus interest after March 14, 1997, at the rate of $64.236 per day until paid;

(5) on Count V, against defendant Saul Ellis in the amount of $114,461.84, plus interest after March 14, 1997, at the rate of $24.118 per day until paid;

(6) on Count VI, against defendant Saul Ellis and Company, Inc. in the amount of $114,461.84, plus interest after March 14, 1997, at the rate of $24.118 per day until paid.

**IT IS FURTHER ORDERED THAT** the FDIC's mortgage on the real property securing the guaranty by defendant Saul Ellis and Company, Inc. of the $170,000 note is foreclosed. The FDIC is ordered to submit to the court a proposed order of foreclosure, consistent with this Memorandum and Order, on or before July 3, 1997. Defendants are ordered to file any written objection to the proposed order on or before July 11, 1997.

**IT IS SO ORDERED.**

---

3. Defendants have not challenged the particular amounts due on the notes and guaranties.