No. 24,855.

J. E. Bourn et al., *Appellees*, v. Fred P. Beck, Yance Assmussen, Joseph Guipre, William Berneking, Ed Louthan, The Farmers State Bank of Simpson et al., *Appellants*.

SYLLABUS BY THE COURT.

1. Slander—*Slander of Title—Malice Covered by Instructions.* In an action for slander of title, where the jury is told that the plaintiff is required to show malice, the subject of malice and bad faith is sufficiently covered in the instructions by saying that the term malice implies a wrongful act, done intentionally, and without just cause or excuse, and that the jury may infer malice, although not obliged to do so, from proof that the defendants falsely spoke the slanderous words charged without ' probable cause or otherwise than in good faith; and the addition to such an instruction of the statement that the plaintiff need not prove that the defendants were actuated by express malice, hate, spite or ill will. does not render it erroneous.

2. Same—*Corporation Liable for Slanderous Words Used by Agent.* A corporation may be liable for slander of title by reason of words used by its agent while acting within the scope of his authority.

3. Same—*Findings Not in Conflict With General Verdict Nor With Each Other.* Answers to special questions are held not to have been in conflict with the general verdict or with each other, and not to have been without support in the evidence.

4. Same—*Evidence—Not Hearsay—Not Self-serving Declarations.* Where one of the issues is whether or not an oral agreement was reached by the plaintiff and another person, their testimony as to what was said between them in that connection relates to a verbal act and is not open to objection as hearsay or as including self-serving declarations.

5. Same—*Opinion Evidence.* Rulings concerning the competence of opinion evidence and the character of a deed given for security are held not to constitute prejudicial error.

Appeal from Mitchell district court; William R. Mitchell, judge. Opinion filed June 7, 1924. Affirmed.

*R. L. Hamilton,* and *W. O. Wanzer,* both of Beloit, for the appellants.

*R. M. Anderson, W. C. Perry,* both of Beloit, and *C. L. Hunt,* of Concordia, for the appellees.

The opinion of the court was delivered by

Mason, J.: J. E. Bourn and his wife sued the Farmers State Bank of Simpson and a number of its officers, alleging that while he was on the point of selling a mill property. of which he was the owner, subject to certain liens, mainly held by the bank, the defend-

ants prevented the sale by falsely asserting to the proposed buyer that the bank owned and controlled the property, and that it was not worth what he was asking for it. The plaintiffs recovered a judgment for $7,320, and the defendants appeal.

There was a first mortgage on the property for $8,160, $2,000 of which was due July, 1921. The bank had a second mortgage for $15,000. On October 7, 1921, the bank paid to the holder of the first mortgage the $2,000 and interest then due thereon, and the plaintiffs executed to the bank an instrument in the form of a warranty deed, which the plaintiffs have at all times regarded as given for security, and which the court held to be in effect a mortgage, but which the defendants pleaded as an actual conveyance, accompanied by an oral agreement that if Bourn would sell the property for the bank before March 1, 1922, he should receive for his services whatever it brought over the indebtedness against it, the bank to accept $2,500 in cash and extend time on the rest of the debt. Bourn entered into negotiations with T. J. Burton to sell or trade him the mill property (which was valued in the deal at $50,000) for an incumbered farm, Burton to pay $2,500 down, which was to go to the bank to apply on what was owing to it. On February 21 and 22, Bourn, Burton and the bank officers and directors met to consider the matter. There was evidence sufficient to support findings, which the jury must be deemed to have made, that the proposed deal was agreed to between Bourn and Burton and would have been formally entered into except for the conduct of the defendants, who at these meetings represented to Burton that the bank owned the mill property outright, that Bourn did not own it and had nothing to do with it, and that it was worth no more than from $20,000 to $25,000; and that by reason of these representations Burton refused to trade.

1. The plaintiffs are asking damages against the defendants for having prevented them from selling the property by knowingly making false statements concerning it. The action is called one for slander of title and slander of property, although the analogy to slander of an individual is not complete. "An action for slander of title is an action for special damage sustained by reason of the speaking of slander of the plaintiff's title to property. The action, in its nature, is not properly for words spoken or for a libel written or published, but is in the nature of an action of trespass on the case for special damages sustained by reason of the act of the

defendant. The cause of action is denominated slander of title by
a sort of figure of speech in which the title is personified and made
subject to many of the rules applicable to personal slander when the
words themselves are not actionable." (17 R. C. L. 454.) The
principal complaint of the defendants is that the trial court did not
properly instruct the jury with respect to malice. The instructions
included these statements:

"If you believe from the evidence in this case that the defendants or any
one of them, either collectively or individually, by means of a conspiracy or
otherwise; falsely and maliciously made any or all of the statements as claimed
by plaintiffs in their petition, in reference to plaintiffs' property known as the
Simpson mill, and that Tom Burton, by reason of such statements, if any, was
induced not to trade for the Simpson mills when he would otherwise have
traded for said mill, and plaintiffs have suffered damage thereby, as claimed in
their petition, your verdict should be for the plaintiffs and against such
defendant or defendants for the sum, if any, you find plaintiffs actually lost
thereby."

"Malice, as spoken of in these instructions, means a wrongful act, done
intentionally, and without just cause or excuse, and it is not necessary for the
plaintiff to prove that the defendant or defendants were actuated by express
malice, hate, spite or ill will, if you believe from the evidence and circum-
stances of the case that the defendants or any one of them falsely made any of
the slanderous statements charged in plaintiffs' petition without probable cause,
or that they were not made in good faith, you may infer malice therefrom,
but you are not obliged to do so."

The defendants say the jury should have been told that "before
they could find for the plaintiffs they must first find express malice
on the part of the defendants." "Express malice" is used by law
writers in different senses, and there is no general agreement as to
the force to be given it. "In fact, such confusion has been created
that it is a matter of the greatest difficulty, if it is not quite im-
possible, so to distinguish between express and implied malice as to
render these terms intelligible to a jury." (18 R. C. L. 7.) The
language quoted is adapted from a note in which abundant illustra-
tions are given. (38 L. R. A., n. s., 1072, 1073.) As employed in
the foregoing instructions the phrase should be interpreted in the
light of the context rather than in accordance with the technical
meanings sometimes given it. The instructions made it clear that
the defendants' liability depended upon proof of intentional wrong-
doing on their part, and this is the vital point so far as relates to
their mental attitude. If the defendants knowingly made false
statements with the purpose of preventing the sale of the property

for the purpose of gaining some financial advantage to themselves at the expense of the plaintiffs, their conduct was malicious in the sense here important, although they may have had no personal ill will toward them.

The defendants' brief contains quotations from various sources to to the effect that a mere false statement impugning the title of another, made under an honest mistake by one having an interest to protect, is not actionable. This may be readily conceded. Sometimes the language goes further and declares in effect that no action will lie unless it be proved that the defendant knew his claim of title was invalid, which is probably going too far. A number of passages quoted by the defendants contain, in substance, the statement that "whenever a man claims a right of title in himself it is not enough for plaintiff to prove that he has no such right; he must also show that defendant could not honestly have believed in the existence of the right he claimed, or at least that he had no reasonable or probable cause for so believing." (25 Cyc. 562.) This recognizes the existence of probable cause to believe the plaintiff's title bad as a test of a defendant's good faith in disparaging it, and is in accord with the instruction given rather than contradictory to it. In an early case this court said: ". . . This action cannot be maintained without showing malice and want of probable cause. If what the defendant did was in pursuance of a *bona fide* claim which he was asserting honestly, and especially if he was acting under the advice of counsel, though without right, he will not be liable." (*Stark v. Chitwood*, 5 Kan. 141, 144.) This likewise is consistent with the charge of the court. While it says that both malice and want of probable cause must exist in order to make a cause, it does not forbid the inference of malice from want of probable cause, in such circumstances as those here presented.

Complaint is also made of an instruction to the effect that all persons are presumed to know the law, and the defendants were presumed to know that the deed in question was an equitable mortgage, but in determining whether the defendants were actuated by malice, either express or implied, the jury might consider whether they acted in good faith. One objection made to the instruction is that it allowed the jury to imply malice while finding good faith. We do not regard it as open to that construction. Another objection is that it assumes the deed to have been a mortgage. That fact was abundantly proved and practically conceded.

An instruction that the defendants had no right to control or interfere with the Bourn-Burton trade is objected to on the ground that it invited a verdict for the plaintiffs on the theory of a breach of contract by the defendants. We think its bearing was upon their good faith. Complaint is made of the omission to refer to malice in an instruction relating to the proof required concerning the contract between Bourn and Burton. The necessity for proving malice having been once stated, there was no occasion to repeat it. The measure of damages given by the court was the difference in the market values between the property Bourn was to give and what he was to receive in the trade which the defendants were alleged to have prevented. This is objected to, but seems to give the proper test. Instructions concerning punitive damages are complained of, not as material in themselves, for the jury awarded none, but as showing a misconception in relation to malice. The point is covered by what has already been said. Instructions given concerning conspiracy are objected to on the ground that there was no evidence of any conspiracy by the defendants. We think there was room for an inference that what they did in the matter was prearranged—the result of conference and agreement.

Various requested instructions relating to malice and to good faith were refused, and complaint is also made of this. We regard most of the questions of law involved in this assignment as substantially the same as those already considered. The instructions quoted appear to have sufficiently covered the matters referred to. Other instructions asked—such as one concerning conspiracy—are regarded as either sufficiently covered by the general charge or not of enough importance to form the basis for a reversal.

2. A final question with reference to the instructions was raised by a request for a directed verdict for the bank on the ground that a corporation cannot be held liable for slander, at all events unless the words complained of were expressly ordered or ratified by its governing body. There is still some conflict of opinion on that subject, but we accept the modern and prevailing view that a corporation may be liable for slander, and especially for slander of title, because of the utterance of an agent while acting within the scope of his authority. (14a C. J. 779-781.)

3. In answer to special questions the jury found that the defendants honestly believed that the instrument in the form of a deed was such in fact and conveyed the property to the bank, and that

the bank was its owner, subject only to the rights of the plaintiffs to find a purchaser for it on or before March 1, 1922. The defendants urge that these findings are conclusive in their favor upon the issues of malice and good faith, and require a judgment in their favor. The evidence justified a finding, which the jury may be regarded as having made, and which would support the judgment, that the defendants maliciously misrepresented the value of the mill property to Burton and thereby prevented its sale to him.

It is also urged that the special findings above referred to are inconsistent with a further finding that the defendants conspired to slander the title of the plaintiffs to the mill property. The jury did not find that the defendants honestly believed that the bank was the absolute owner of the property, but that they honestly believed that it was the owner "subject only to the rights of the plaintiffs to find a purchaser for said mill property on or before March 1, 1922." The evidence warranted a finding, which may be deemed to have been made, that the defendants conspired to lead Burton to believe that the plaintiffs had no rights whatever in relation to the property.

It is contended that there was no evidence to support other findings made by the jury which were favorable to the plaintiffs, including a negative answer to the question whether the defendants at all times acted in good faith in an honest endeavor to protect the interests of the bank in the mill property. To discuss them in detail would unduly extend the opinion. We hold the contention not to be well founded.

4. Bourn was permitted to testify as to his conversations with Burton concerning the proposed trade between them. This is objected to on the ground that the testimony was hearsay and included self-serving declarations. The objection is not well taken. The evidence was not introduced in order to persuade the jury of the existence of some fact by showing them that Bourn or Burton had at some time said that it existed. The purpose was to show that an oral agreement was reached by the two, and the primary evidence of that was what each said at the time; the question at issue was whether or not words had been used creating a tentative contract. The evidence was of a "verbal act." "The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can

Dohner v. Grocery Co.

be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply." (3 Wigmore on Evidence, 2d ed., § 1766.) Complaint is also made of the admission of testimony as to what Burton had said concerning his reasons for not trading. The objection is not available now, because none was made at the trial.

5. The defendants assert that several witnesses were permitted to give their opinions as to the value of the mill property without having sufficiently qualified as experts. We think the objections go rather to the weight than to the competence of the evidence, and it is to be presumed that the jury were not unduly influenced by the testimony of witnesses lacking in familiarity with the subject.

, Complaint is made because the court declared the deed in question to be an equitable mortgage before hearing the evidence, the defendants adding, however: "While the defendants, in view of the facts, could not complain of the ruling of the court had it been made at the end of the trial, still the court could not legally, without hearing the evidence, declare the instrument to be an equitable mortgage." Obviously the ruling was not prejudicial.

The judgment is affirmed.