No. 42,975

DOUGLAS T. FERRARO, *Appellee,* v. A. A. FINK, d. b. a. LATTIMORE-FINK LABORATORIES, *Appellant.*

(379 P. 2d 266)

Opinion filed March 2, 1963.

*Jacob A. Dickinson,* of Topeka, argued the cause, and *Sam A. Crow, Ralph E. Skoog, Bill G. Honeyman* and *Hart Workman,* all of Topeka, were with him on the briefs for the appellant.

*William R. Brady,* of Topeka, argued the cause, and *Reese H. Robrahn,* also of Topeka, was with him on the briefs, for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This appeal arises out of an action for wages due under a contract of employment.

Plaintiff (appellee) Douglas T. Ferraro commenced this action against A. A. Fink, doing business as Lattimore-Fink Laboratories, defendant (appellant), to recover wages due and owing for services as a pathologist in defendant's laboratory.

Defendant answered, denying he was indebted to plaintiff for the reason that plaintiff had, in violation of the contract of employment, performed services other than for the account and benefit of defendant, thus forfeiting any right for the wages alleged to be due. The defendant, by way of cross petition, alleged that plaintiff had breached a subsequent written agreement not to compete with appellant by opening a laboratory or practicing pathology in competition with appellant's laboratory. The agreement so relied upon reads as follows:

"May 20, 1959.

"I, Doctor Douglas T. Ferraro, hereby agree that I will not open a laboratory, accept a position or practice pathology which is in any way competitive to the Lattimore-Fink Laboratories. If I should do this I would return to Dr. A. A. Fink of The Lattimore-Fink Laboratories the last six months salary or income which I had received from him.

"s/ Douglas T. Ferraro."

Defendant further alleged that notwithstanding the agreement plaintiff opened a laboratory and began the practice of pathology in competition with defendant. Under the agreement the defendant sought to recover six months' salary paid plaintiff.

Plaintiff, in answer to defendant's cross petition, denied the allegations thereof and further alleged that the mentioned alleged memorandum agreement was not a part of the oral contract of employment originally entered into between the parties nor a part of any contract of subsequent employment, and that such memorandum agreement was wholly without consideration, void, and of no legal effect.

On the issues thus joined the case proceeded to trial to a jury that returned a general verdict in plaintiff's favor for $816.62 and its answer to the following special question:

"1. If you find that Dr. Ferraro signed a non-competition agreement, dated May 20, 1959, was there something of value, some promise, benefit or advantage constituting a consideration flowing to Dr. Ferraro in exchange for his signing?

"A. No."

From an order of the trial court overruling defendant's motion for a new trial and entering judgment on the general and special verdict defendant has appealed.

An examination of defendant's specifications of error reveals that the sole question presented on this appeal is whether, under the circumstances, the trial court committed prejudicial error in submitting to the jury the question of whether there was any con-

sideration for the alleged unilateral contract of May 20, 1959, made a part of defendant's cross petition. It is defendant's contention the question of consideration was a matter of law for the court. It is plaintiff's contention, in view of the issues joined by the pleadings, any consideration for the alleged contract of May 20, and the further fact the instrument was unilateral in nature, reciting no consideration, and not being a part of their original contract of employment nor referring to any fact in which consideration could be implied, that therefore the question of consideration was properly submitted to the jury.

At the outset it may be stated this is purely a fact case. In March of 1958 defendant, operating a medical laboratory and providing services to doctors and hospitals in Kansas, was seeking an additional staff member. As a result of the search plaintiff came to Topeka for a conference, and, after additional correspondence, plaintiff was employed by defendant and reported to work July 1, 1958, at an agreed salary and a promise of an increase in salary at the end of the first year. Plaintiff performed services in connection with defendant's laboratory. There was nothing in the original agreement of the parties that plaintiff was not to compete with defendant in his business.

During the spring of 1959 defendant became concerned with reference to possible competition from the plaintiff and sought to have plaintiff enter into an agreement not to compete; however, plaintiff refused to sign any such agreement. Plaintiff testified that at no time was there submitted to him a contract such as the one of May 20, 1959; that he received an increase in salary in June of 1959 and there was no discussion with reference to the aforementioned memorandum. The plaintiff admitted his signature to this memorandum but denied there was any typing or writing above his signature at the time of the signing. Plaintiff testified he had on a few occasions signed blank pieces of paper late in the afternoon so that the matter previously dictated might be typed and sent out to laboratories.

Defendant Fink testified that in the spring of 1959 he pointed out to plaintiff that plaintiff was protected by letters defendant considered a contract, since he had signed them, but that defendant was in no way protected against plaintiff's performing acts inconsistent with defendant's situation, and requested plaintiff to sign a document of assurance of loyalty and plaintiff said he didn't feel it was necessary; that at that time plaintiff wanted to buy a house

and that defendant would sign his note in an amount up to $10,000, and that defendant did so; that on May 20 he called plaintiff in and presented him with the contract of May 20 and that plaintiff said he didn't think it was necessary; however, plaintiff did sign the instrument on May 27.

Plaintiff again denied that he signed the instrument with the typing above, and stated that the signing of the $10,000 note as security on the purchase of his home had nothing to do with the instrument dated May 20.

Defendant further testified that after the contract of May 20 was signed he increased plaintiff's salary the following month on the assurance that he had plaintiff's written statement that he would not compete. Plaintiff testified that such increase in salary was due him under the original contract, which provided that at the end of the first year he was to receive an increase in salary.

No useful purpose would be gained in reiterating and detailing the testimony of the parties in view of the question of law raised.

G. S. 1949, 16-107, provides all contracts in writing, signed by the party bound thereby, shall import a consideration. G. S. 1949, 16-108, provides the want or failure in the whole or in part, of the consideration of a written contract, may be shown as a defense, total or partial, as the case may be, in an action on such contract, brought by one who is not an innocent holder in good faith. The presumption of consideration is not a presumption of law; it is a presumption of fact. It extends to any fact which under the situation and circumstances of the parties might reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting the inference of no consideration of any kind. It is always an affirmative defense, and may not be inferred or presumed. (*Palmer v. The Land & Power Co.*, 172 Kan. 231, 238, 239 P. 2d 960; *Chisholm v. Snider*, 145 Kan. 573, 579, 66 P. 2d 606.)

In *National Bank v. Williams*, 117 Kan. 501, 503, 232 Pac. 252, we held that a failure of consideration is a defense to a promissory note when the suit is by the payee against the maker, and this may be shown by parol evidence and is naturally a jury question. Ordinarily the question of the presence of a benefit or detriment to the promisor, sufficient to constitute a consideration, is a question of fact, as is the question of what constitutes the consideration, where it is controverted. (17 C. J. S., Contracts, § 613, p. 1276.) Where consideration for a contract is controverted, the conflict between testimony of want of consideration and a statutory presumption of

valuable consideration is sufficient to require a submission of the question of consideration to the jury. (53 Am. Jur., Trial, § 2261, pp. 220, 221.)

In view of the issues joined by the pleadings in this action, and the fact that the May 20 purported agreement was unilateral in nature, reciting no consideration and being no part of the original contract of employment, and the fact that consideration for such instrument was highly disputed, the court did not err in submitting the question of consideration for the agreement to the jury under all the facts and circumstances in the case, and the judgment of the trial court is affirmed.