**FIRST NATIONAL BANKSHARES OF BELOIT, INC.; Jerome J. Eilert; Thomas H. Conroy; Francis Gronewoller; Robert L. Lampert; Phil G. Thull; F.W. Lampert Trust B; Andra V. Lampert; Francis Gronewoller as Custodian for Eric, Paul, and Aaron Lampert; and Robert D. Meats, Plaintiffs/Counter-defendants,**

v.

**Joseph S. GEISEL, Jr., Edward P. O'Connor, Terrence J. Lillis, Co–Trustees of Frances H. Giblin Trust No. 1; and Terrence J. Lillis, Guardian and Conservator of Frances H. Giblin, Defendants/Counter-claimants.**

Civ. A. No. 92–4279–DES.

United States District Court, D. Kansas.

May 31, 1994.

---

Charles D. Green, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, KS, James L. Grimes, Jr., Foulston & Siefkin, Topeka, KS, for First Nat. Bankshares of Beloit, Inc.

Charles D. Green, Arthur, Green, Arthur, Conderman & Stutzman, Manhattan, KS, for Jerome J. Eilert, Thomas H. Conroy, Francis Gronewoller, Robert L. Lampert, Phil G. Thull, F.W. Lampert Trust B, Andra V. Lampert, Francis Gronewoller, Robert D. Meats.

Roger D. Stanton, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, Overland Park, KS, M.J. Willoughby, Lawrence, KS, for Joseph S. Geisel, Jr.

Roger D. Stanton, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, Overland Park, KS, for Edward P. O'Conner, Terrance J. Lillis.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the defendants for summary judgment (Doc. 128).[1]

### The Parties

The plaintiffs, a bank holding company and its minority shareholders, initially filed this action in the District Court of Mitchell County, Kansas, on November 5, 1992. The defendants, the co-trustees of the Frances H. Giblin Trust No. 1 and the conservator of Frances H. Giblin,[2] removed the action to

---

1. On January 20, 1994, the plaintiff bank holding company filed a notice of change of position, stating its intention to join in the defendants' motion for summary judgment. See Doc. 135. For the sake of simplicity, the motion is nevertheless referenced in this memorandum and order as that of the defendants.

2. On March 21, 1991, Frances H. Giblin was determined legally incapacitated by the Probate Division of the Circuit Court of Jackson County, Missouri, where she presently resides.

this court on the basis of diversity pursuant to 28 U.S.C. § 1332. The defendant trust was established for the benefit of Frances H. Giblin during her lifetime, and it is the majority shareholder of plaintiff First National Bankshares of Beloit, Inc. ("the holding company"). The holding company in turn owns 100 percent of the stock of the First National Bank of Beloit ("the bank").

### Nature of the Case

Plaintiffs essentially seek to enforce an alleged stock option agreement originally executed by Frances H. Giblin in 1982, as modified in 1989 by Frances H. Giblin individually and by Frances H. Giblin and Jerome J. Eilert, then the co-trustees of the Frances H. Giblin Trust No. 1 ("the trust"). The option agreement at issue purports to give the plaintiff holding company a first right and option to purchase the trust's majority interest in the holding company for a flat price of $1,898,803, within one year after the death of Frances H. Giblin. All parties agree that this figure significantly understates the present value of the trust's 770 shares,[3] which constitute 61 percent of the outstanding voting stock of the plaintiff holding company. The remaining 39 percent of the outstanding stock is collectively owned by the other plaintiffs to this action (hereinafter "minority shareholder plaintiffs").

The defendants, who represent the interests of Frances H. Giblin, the lifetime beneficiary of the defendant trust, have repudiated the alleged option agreement by communicating their intent to revoke it. Among other claims, the minority shareholder plaintiffs bring this suit as a shareholder derivative action on behalf of the holding company. They allege that the defendants, as recently elected directors of the holding company, wrongfully refuse to take action in the interest of the corporation to enforce the option agreement against the trust. Plaintiffs also seek a declaratory judgment that the option agreements are valid and enforceable. The defendants have filed a counterclaim seeking a declaratory judgment to the effect that both the 1982 option contract and the 1989 modification are unenforceable, contending among other things that they were not supported by consideration and that the defendants properly revoked them.

### Jurisdiction

The individual plaintiffs to this action are all citizens of the state of Kansas. Robert Lampert and Francis Gronewoller, the trustees of plaintiff F.W. Lampert Trust B, are both citizens of Kansas. First National Bankshares of Beloit, Inc., is a Kansas corporation with its principal place of business in Kansas, and is therefore deemed a citizen of Kansas.[4] See 28 U.S.C. § 1332(c)(1). Each of the defendants is a citizen of the State of Missouri, and Frances H. Giblin is also a citizen of Missouri. See 28 U.S.C. § 1332(c)(2). The court therefore has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

### Summary Judgment Standards

Under Fed.R.Civ.P. 56, the court is compelled to render summary judgment on behalf of a moving party if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof

---

3. Defendants contend that the trust's stock is worth more than $4.5 million.

4. The minority shareholders' motion to realign the bank holding company as a party defendant, which would have defeated diversity jurisdiction, was recently denied by this court. *See First Nat'l Bankshares v. Geisel*, 853 F.Supp. 1333 (D.Kan. 1994), filed May 20, 1994.

that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In opposing a properly supported motion for summary judgment, a party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party must go beyond the pleadings and designate specific facts, by affidavits, depositions, answers to interrogatories, and admissions on file, showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2553. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514.

The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). However, a mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### Facts

The relevant facts underlying this controversy are for the most part uncontroverted, at least for purposes of resolving this motion for summary judgment.

Plaintiff holding company presently owns 100 percent of the stock of the bank. A total of 1,259 shares of holding company stock are presently outstanding. The plaintiffs, other than the holding company, collectively own 489 shares, or about 39 percent of the outstanding stock. The other 770 shares, representing about 61 percent of the outstanding stock, were originally owned by Frances H. Giblin.

On March 26, 1982, Frances H. Giblin signed a document titled "Option" ("the 1982 option agreement"). The 1982 option agreement purported to give the plaintiff holding company a first right and option to purchase Frances Giblin's stock in the holding company within 12 months of her death, for an amount computed on the basis of a formula tied to the value of the bank. Although the agreement states that it was given for "One Dollar ($1.00) and other valuable consideration," no monetary consideration was paid to Frances Giblin by the holding company at the time the 1982 option agreement was signed.

In 1985, Frances Giblin transferred her shares in the holding company to the trust, a revocable inter vivos trust established for her sole benefit during her lifetime. Frances H. Giblin and Jerome J. Eilert were originally designated co-trustees. Subsequently, defendants Joseph S. Geisel, Edward P. O'Connor, and Terrence L. Lillis have been duly authorized to serve as trustees of the trust.

On August 1, 1989, Frances Giblin on her own behalf executed a document titled "Option" ("the 1989 option agreement"). This document was also signed by Frances Giblin and Jerome Eilert in their capacities as co-trustees of the trust. The 1989 option agreement purports to give the holding company a first right and option to purchase the trust's stock in the holding company for a flat price of $1,898,803, within one year after the death of Frances H. Giblin. The 1989 option price was calculated by applying the previous formula to the book value of the bank as of December 31, 1988. By its terms, the 1989 agreement superseded the 1982 option agreement. Like the 1982 option agreement, the 1989 agreement recites that it was given for $1.00 and other valuable consideration. However, the holding company did not pay monetary consideration to either Frances H. Giblin or to the trust at the time the 1989 option agreement was signed.

On March 21, 1991, Frances H. Giblin was declared mentally incompetent by the Probate Division of the Circuit Court of Jackson County, Missouri. Defendant Terrence J. Lillis is the duly appointed guardian of Frances H. Giblin and the conservator of her estate.

By letter dated June 24, 1992, the defendant co-trustees of the trust advised the holding company of their repudiation of the 1989 option agreement. Jerome J. Eilert, then the president of the holding company, received actual notice at the trustees' meeting on June 24, 1992, that the co-trustees intended to revoke the 1989 option agreement. The holding company received the letter repudiating the 1989 option agreement on June 25, 1992. On that date, the holding company attempted to pay the $1.00 consideration for the 1989 option agreement by depositing $1.00 in the trust's bank account. On July 10, 1992, when the trustees discovered the deposit, the $1.00 was returned to the holding company. The co-trustees also expressly rejected the holding company's attempt to pay the consideration for the 1989 option agreement.

On September 3, 1992, the holding company paid one dollar to Terrence Lillis, guardian and conservator of Frances H. Giblin. This payment was intended to convey the $1.00 consideration recited in the 1982 option agreement. The one dollar payment was returned by the defendants to the holding company on or about September 8, 1992, along with a letter giving notice that the defendant trustees repudiated the 1982 option agreement.

Between March 1, 1982, when the holding company's stock was originally issued, through August 1, 1989, the holding company paid dividends totalling $22,499.40 to Frances H. Giblin or to the trust on her behalf. Since the 1989 option agreement was executed, however, the holding company has paid no dividends to the trust. However, the bank has paid dividends totalling $1,250,000 to the holding company since the 1989 option agreement was signed. The dividends paid by the bank to the holding company have been held for the purpose of purchasing the 770 shares of stock owned by the trust.

Plaintiffs Jerome Eilert, Robert Lampert, Phil Thull, and Francis Gronewoller have continued serving as officers of First National Bank of Beloit from 1982 until the present time. Plaintiff Robert Meats has been employed by the bank continuously from 1987 until the present time.

Since 1982, the Bank has paid compensation in the form of a salary, bonus, and fringe benefits, including a non-taxable contribution to each employee's profit-sharing plan, to those plaintiffs who are presently employed by the bank. The bonus portion of the compensation package is tied to the profitability of the bank. The individual plaintiffs who have been employed by the bank have been adequately compensated for their work. Their compensation package is at least average compared to the compensation of similar bank officers in comparable Kansas banks.

The book value of the holding company in 1982 was $2.2 million. As of December 31, 1992, the holding company's net worth was approximately $6.9 million.

### The Issues

The defendants generally contend that they are entitled to summary judgment against the plaintiffs on each of their claims and in favor of the defendants on their counterclaim seeking a declaratory judgment. Specifically, the defendants contend that the holding company did not pay the monetary consideration recited in the option agreements, that plaintiffs' promissory estoppel theory of recovery fails as a matter of law, and that plaintiffs' material benefit theory also fails as a matter of law. Defendants also seek a declaratory judgment that they properly revoked the option agreements because they lacked legally sufficient consideration and therefore were not binding and irrevocable option contracts.

### Recited Consideration

 Every contract requires consideration to be enforceable. *Flight Concepts Ltd. Partnership v. Boeing Co.,* 819 F.Supp. 1535, 1553 (D.Kan.1993); *State ex rel. Ludwick v. Bryant,* 697 P.2d 858, 861 (Kan.1985); *Belt v. Shepard,* 15 Kan.App.2d 448, 808 P.2d

907, 911 (1991); *see* K.S.A. 16–107 (all written contracts shall import a consideration). The consideration sufficient to support an ordinary contract, such as a promise for a promise, will also support an option. *See Steel v. Eagle,* 207 Kan. 146, 483 P.2d 1063, 1067 (1971). Lack of consideration is an affirmative defense in a breach of contract action, and as a general rule it must therefore be asserted and established by the person claiming it. K.S.A. 16–108; 60–208(c); *Hill v. Hill,* 185 Kan. 389, 345 P.2d 1015, 1021 (1959); *Garden Nat'l Bank v. Cada,* 11 Kan.App.2d 562, 729 P.2d 1252, 1255 (1986), *rev'd on other grounds,* 241 Kan. 494, 738 P.2d 429 (1987). The defendants in this case therefore have the burden of establishing their affirmative defense that consideration was lacking for the two option agreements.

▉ Under Kansas statutes, it is presumed that consideration has been given in support of a written contract. *See Ferraro v. Fink,* 191 Kan. 53, 379 P.2d 266, 269 (1963). The presumption of consideration "extends to any fact which under the situation and circumstances of the parties might reasonably supply a consideration, and it cannot be overthrown except by proof of facts warranting an inference of no consideration of any kind." *Id.* (interpreting K.S.A. 16–107, –108). The presumption of consideration is a presumption of fact. *Id.*

▉ The question of the presence of a benefit or detriment to the promisor, sufficient to constitute consideration, is ordinarily a question of fact. *Id.* If controverted, the question of what constitutes the true consideration for the contract is also a question of fact. *Id.* A conflict between evidence that

consideration is lacking, and the statutory presumption of valuable consideration having been given, is sufficient to require submission of the question of consideration to the jury. *Id.* Nevertheless, when the defendant to a breach of contract action files a motion for summary judgment asserting lack of consideration, supported by substantial competent evidence, the statutory presumption of fact is rebutted. The burden then shifts to the party seeking to enforce the contract to come forward with sufficient evidence to show that a genuine issue of fact exists as to whether the contract in question was supported by consideration. *See State ex rel. Ludwick v. Bryant,* 697 P.2d at 861; *see also Anderson v. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553.

▉ An option contract not supported by consideration may be withdrawn by the offeror at any time prior to its acceptance by the offeree. *Berryman v. Kmoch,* 221 Kan. 304, 559 P.2d 790, 794 (1977). The defendants in this case have presented substantial competent evidence that the $1.00 consideration recited in the 1989 option agreement was not paid by the holding company prior to the date the holding company received actual notice that the defendant trust repudiated the 1989 option.[5] The court finds that the plaintiffs have presented insufficient evidence to withstand summary judgment on the defendant's assertion that the monetary consideration of $1.00 recited in the 1989 option agreement was not paid prior to the date of its repudiation.[6] The defendants therefore had the right to revoke the 1989 option agreement, and they are entitled to partial

---

5. Although the plaintiffs argue in the alternative that consideration was given under the theories of promissory estoppel or material benefit, the court has determined that the plaintiffs' claims on those theories are foreclosed, either on the basis of insufficient evidence to establish an essential element on which they have the burden of proof in the case of promissory estoppel, *see infra* pp. 21–22, or as a matter of law in the case of the material benefit rule, *see infra* pp. 22–25.

6. Nominal consideration is sufficient to support a written option contract if it proposes an exchange on fair terms within a reasonable time. *Restatement (Second) of Contracts* § 87(1)(a) &

cmt. b. See *infra* n. 9 (text of § 87). The fact that the nominal consideration recited in the contract was not in fact paid does not invalidate an option agreement under these particular circumstances. *Id.* However, while the exchange proposed in the 1989 option agreement was arguably on fair terms at the time it was executed, sufficient time has elapsed to render it an unfair exchange. It is uncontroverted that the option price in the 1989 agreement is substantially less than the present value of the trust's 770 shares. Therefore, the 1989 option agreement cannot be enforced absent the timely payment of the recited nominal consideration.

summary judgment on this issue as it pertains to the 1989 option agreement.

■ However, the defendants are not entitled to summary judgment on the issue of whether the 1982 option agreement was revoked prior to the plaintiffs' tender of the recited monetary consideration of $1.00. There is documentary evidence in the record from which a trier of fact could conclude that the 1982 agreement was not repudiated until after the plaintiffs tendered payment.[7] If so, the defendants are not entitled to judgment as a matter of law on the issue of whether they properly revoked the 1982 agreement, at least not on the basis of the arguments presented in their motion for summary judgment.[8]

■ The defendants argue for the first time in their reply that the plaintiffs cannot elect to pursue enforcement of the 1982 option agreement as an alternative to the 1989 option agreement. Whether or not the 1982 option agreement may be enforced in lieu of the 1989 agreement, which the court has determined was revoked before plaintiffs tendered the consideration recited in the agreement, turns on whether the 1989 agreement was a novation or an executory accord. *See Elliott v. Whitney,* 215 Kan. 256, 524 P.2d 699, 703 (1974). If the 1989 agreement was a novation, it superseded and extinguished the 1982 option agreement. *Id.* If it was instead an executory accord, the revocation of the 1989 agreement would allow the plaintiffs to pursue enforcement of the 1982 agreement in the alternative. *See id.*

■ In raising this issue, the defendants essentially contend that the 1989 option contract was a novation, extinguishing the 1982 option agreement by superseding it. Novation, however, is an affirmative defense which must be pleaded as such. *See* 58 Am.Jur.2d Novation § 50; 66 C.J.S. Novation § 26; *see also Barbara Oil Co. v. Kansas Gas Supply Corp.,* 250 Kan. 438, 827 P.2d 24, 36 (1992) (elements required for invocation of defense of novation). The defendants have raised 20 distinct affirmative defenses in their answer to the first amended complaint, but none of them raise the issue of novation as a defense to enforcement of the 1982 option agreement. The court therefore declines to address this issue, having been raised for the first time in the defendant's reply.

■ Even if the court were to address the issue of novation, one of the requisite elements is that the new contract must be valid. *Id.* If consideration was lacking for the 1989 option agreement, as the defendants contend, it would not have been a valid contract. *See Flight Concepts,* 819 F.Supp. at 553 (consideration is essential for a valid contract).

*Promissory Estoppel*

■ As previously noted, an option contract not supported by consideration is merely an offer to sell, which may be withdrawn by the offeror at any time prior to acceptance by the offeree. *Berryman v. Kmoch,* 559 P.2d at 794. However, the doctrine of promissory estoppel may serve as a

---

7. The defendants rely on a request for admission to the effect that the holding company was advised on June 24, 1992, that the defendants intended to revoke "the options." They also cite the testimony of Jerome Eilert on direct examination at the preliminary injunction hearing. He responded in the affirmative when asked whether June 24, 1992, was the first time he had heard that the defendants intended to revoke both the 1982 and the 1989 options. However, the minutes of the trustees' meeting on June 24, 1992, and the subsequent notice mailed to the holding company, both indicate that the trustees' decision was to revoke the 1989 option agreement alone. Furthermore, the letter dated September 8, 1992, by which the defendants returned the tendered $1.00 in consideration for the 1982 option agreement, expressly gave notice to the holding company that the co-trustees considered the 1982 option agreement invalid. Because all inferences from the evidence must be drawn in favor of the nonmoving party, the court is of the opinion that there is sufficient evidence from which a trier of fact could conclude that the 1982 option agreement was not in fact repudiated until September 8, 1992, after the holding company tendered the $1.00 consideration for the 1982 option agreement.

8. The parties have not asked the court to address whether the 1982 option agreement fails as a matter of law because of the lapse of time between the date the contract was executed and the date the nominal consideration recited in the agreement was tendered.

substitute for traditional consideration in support of an option contract. *See Fidelity State Bank v. Bedsworth*, 769 F.Supp. 1196, 1198 (D.Kan.1991); *Restatement (Second) of Contracts* § 87(2).[9] If proof of an express contract fails for lack of consideration, but refusal to enforce a party's promise would be unjust because of the plaintiff's reliance upon it, promissory estoppel is the appropriate theory of recovery. *Id.; Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F.Supp. 1154, 1167 (D.Kan.1990). It is an equitable doctrine that may be employed for the enforcement of promises that are noncontractual and otherwise unenforceable. *Id.* at 1167, 1168 (citations omitted).

■■■■ Under the doctrine of promissory estoppel, an option contract may be made binding and irrevocable by subsequent action in reliance upon it, even though such action is neither requested nor given in exchange for the option promise. *Berryman v. Kmoch*, 559 P.2d at 794; *see Restatement (Second) of Contracts* **Sec.** 87(2) & cmt. e. This is true even if the monetary consideration recited in the option contract itself was not paid. *See Berryman v. Kmoch*, 559 P.2d at 793–94; *see also Restatement (Second) of Contracts* § 87 cmt. c (option agreement is not necessarily invalidated by proof that the recited nominal consideration was not in fact given)[10]; *see also Restatement (Second) of Contracts* § 218 cmt. e (incorrect statement of consideration does not prevent proof either that there was no consideration or that there was a consideration different from that stated). Because promissory estoppel is an equitable theory under which otherwise noncontractual promises may be enforced, lack of consideration is not a defense to such a claim but rather a prerequisite. *See Fidelity State Bank v. Bedsworth*, 769 F.Supp. at 1196.

■■■■ In order for the doctrine of promissory estoppel to be invoked as a substitute for consideration, the *plaintiff* must establish that (1) the defendant made a promise, (2) the promise was made under such circumstances that the promisor intended and reasonably expected the promisee to act in reliance on the promise, (3) the promisee acted reasonably in relying on the promise, and (4) a refusal by the court to enforce the promise would result in an injustice. *EDO Corp. v. Beech Aircraft Corp.*, 911 F.2d 1447, 1454 (10th Cir.1990) (applying Kansas law); *Berryman v. Kmoch*, 559 P.2d at 793; *see Patrons Mutual Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 830 P.2d 35, 39 (1992).

■■■■ The offeree's power of acceptance of a proposed option contract is terminated if the offeror takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect. *Berryman v. Kmoch*, 559 P.2d at 795 (quoting *Restatement (Second) of Contracts* § 42 ). In this case, as in *Berryman*, there is no genuine dispute that on or about June 24, 1992, the plaintiffs obtained reliable information from the defendants inconsistent with their intent to be obligated by the 1989 option agreement. The plaintiffs' power of acceptance of the 1989 option contract was thereby terminated, unless there was substitute consideration under the plaintiffs' alternate theory of promissory estoppel prior to the date of the repudiation, thereby rendering it binding and irrevocable.

■■■■ Plaintiffs have presented considerable evidence that Frances H. Giblin over the years promised at least some of the individual minority shareholder plaintiffs that she would give them the opportunity to purchase

---

**9.** The *Restatement (Second) of Contracts* § 87 reads as follows:

(1) An offer is binding as an option contract if it

 (a) is in writing and signed by the offeror, recites a purported consideration for the making of the offer, and proposes an exchange on fair terms within a reasonable time; or

 (b) is made irrevocable by statute.

(2) An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice.

**10.** This special rule applicable to option contracts differs from the general rule stated in *Restatement (Second) of Contracts* § 71 cmt. b. *See* John D. Calamari & Joseph M. Perillo, *Contracts* 199 n. 96 (3d ed. 1987).

her controlling interest in the holding company after her death, if they would continue to work for the bank during her lifetime. There is also evidence in the record from which the trier of fact could infer that at least some of the plaintiffs relied on Frances Giblin's alleged promises in electing to remain employed with the bank rather than pursuing other opportunities in banking.

The defendants contend first that the plaintiffs cannot advance competent, admissible evidence to support their allegation that Frances Giblin made the alleged promises. They contend that the plaintiffs' promissory estoppel claim is premised on the alleged representations of Frances Giblin to certain individual plaintiffs to the effect that if they would stay employed with the bank, they would have the opportunity to gain control of the bank after her death. The defendants argue that this court has already ruled at the hearing on the plaintiffs' unsuccessful motion for a preliminary injunction that such alleged representations are inadmissible hearsay. Therefore, the defendants argue that the plaintiffs' promissory estoppel theory necessarily fails for lack of competent evidence that Frances Giblin made such promises.

The plaintiffs respond at great length with the argument that parol evidence is admissible to establish the true consideration given for the written option agreements. *See First Construction Co. v. Gallup*, 204 Kan. 73, 460 P.2d 594, 595 (1969). This argument, however, merely addresses the applicability of the parol evidence rule, which would otherwise bar evidence of oral representations offered for the purpose of modifying the terms of a written agreement. The principle on which the plaintiffs rely is merely an exception to the parol evidence rule. It does not, however-

er, render evidence admissible that is otherwise inadmissible under the hearsay rule, upon which the defendants rely.

The evidence submitted by the plaintiffs in response to the defendants' summary judgment motion includes the deposition testimony of several of the plaintiffs, all of whom are obviously interested parties, who allege that Frances Giblin made statements to them regarding her intent to allow them to acquire her controlling interest in the bank after she died.[11] The deposition testimony as to the alleged promises made by Frances Giblin to some of the plaintiffs is not hearsay when offered for the purpose of proving that Frances Giblin made the statements in question, *i.e.*, that she performed a "verbal act," and that the plaintiff bank employees reasonably relied on her statements. *See* F.R.E. 801(c) advisory committee note (effect of rule is to exclude from the definition of hearsay the entire category of "verbal acts," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights); *Creaghe v. Iowa Home Mutual Casualty Co.*, 323 F.2d 981, 984–85 (10th Cir. 1963) (conversations as to the making and the terms of oral agreements may be testified to by any person who heard them; proof of words spoken is made not to establish their truth, but simply the fact that they were spoken); *Morales v. Lukens, Inc.*, 593 F.Supp. 1209, 1212 (S.D.N.Y.1984) (testimony of negotiations preceding an agreement generally not proffered for the truth of the statements but rather for the fact the words were spoken); Graham C. Lilly, *An Introduction to the Law of Evidence* 160–67 (1978); 4 Jack B. Weinstein & Margaret A.

11. The court notes that Kansas, unlike many other states, does not have a dead man's statute. Such statutes render incompetent the testimony of an interested party in a civil suit against the fiduciary of the estate of a decedent or a person who is otherwise incapacitated. *See* 3 Spencer A. Gard, *Jones on Evidence* 627–35 & n. 70 (6th ed. 1972); Graham C. Lilly, *An Introduction to the Law of Evidence* 66–69 (1978). Thus, the representatives of Frances Giblin's interests have not challenged the plaintiff bank employees' testimony on this basis. In the absence of a dead man's statute, however, Kansas law imposes a higher burden of proof on the party attempting

to establish a transaction with a person since deceased or otherwise incapacitated. *See In re Estate of Countryman*, 203 Kan. 731, 457 P.2d 53, 59 (1969) (oral contract with a person since deceased must be established by clear, cogent, and convincing evidence); 3 Spencer A. Gard, *Jones on Evidence* 631 n. 83 (6th ed. 1972). Thus, in order to prove that Frances H. Giblin's alleged oral promises to the plaintiff bank employees created a contractual obligation which may be enforced against her fiduciaries on the theory of promissory estoppel, plaintiffs must establish the alleged contract by clear, cogent, and convincing evidence.

Berger, *Weinstein's Evidence* ¶ 801(c)[01] (1993); *see also Bourn v. Beck,* 116 Kan. 231, 226 Pac. 769, 772 (1924) (rejecting hearsay objection to testimony as to conversations between parties to a sales contract regarding the proposed trade between them).[12]

Since the plaintiffs have submitted admissible evidence to establish that Frances Giblin made the alleged promises, the defendants are not entitled to summary judgment on the ground that there is no competent evidence that the alleged promises were made.

The defendants next argue that the plaintiffs' promissory estoppel theory fails as a matter of law because promissory estoppel cannot be invoked as a substitute for consideration for the option agreements and cannot be used to convert a revocable option to an irrevocable and binding contract. With this argument the court disagrees. The Kansas Supreme Court has clearly held to the contrary. *See Berryman v. Kmoch,* 559 P.2d at 794; *see also Restatement (Second) of Contracts* § 87(2) & cmt. e (1981). In *Berryman,* the court concluded only that the requirements for invoking promissory estoppel as a substitute for the monetary consideration recited in the contract had not been met based on the facts of that particular case. 559 P.2d at 794–95.

 Finally, defendants argue that the plaintiffs cannot establish that they relied on the alleged promises to their detriment. They contend that the plaintiffs were adequately compensated for their services as employees of the bank, and therefore evidence is lacking that any of the individual plaintiffs detrimentally relied on the promises allegedly made by Frances Giblin. In response, the plaintiffs argue only that plaintiffs Eilert, Lampert, Thull and Gronewoller remained as officers and directors of the

bank since 1982, and that plaintiff Meats has remained as an officer of the bank from 1987 when he was first employed until the present time, all in reliance on the alleged promises.

The court agrees that the evidence advanced by the plaintiffs does not demonstrate detrimental reliance on the part of the plaintiffs "of a substantial character." *See Restatement (Second) of Contracts* § 87(2). Hence the refusal of the court to enforce the alleged promise would not result in injustice. The plaintiffs do not dispute that they were very adequately compensated for the years they remained employees of the bank. Some of the plaintiffs testified by deposition that they had declined to pursue other opportunities based upon their understanding that they would someday have the opportunity to control the bank. However, this is insufficient evidence as a matter of law to support an inference that the plaintiffs substantially relied on the alleged promises and as a result suffered detriment. *See Restatement (Second) of Contracts* § 87(2) cmt. e.

Since the plaintiffs have not submitted any clear, cogent, and convincing evidence[13] to show they substantially relied on the alleged promises of Frances Giblin to their detriment, they cannot withstand summary judgment on their claim asserting promissory estoppel.

### *Material Benefit Rule*

 In addition to their claim based on the doctrine of promissory estoppel, plaintiffs also contend that they are entitled to enforce the option agreements on the basis of what is known as the "material benefit rule." The material benefit rule is an implied contract theory under which the law deems that a pecuniary benefit already received affords consideration for a subsequent promise to pay for the benefit. *See Holland v. Martin-*

---

12. For their argument that the evidence of Frances Giblin's alleged promises to the plaintiff bank employees are inadmissible hearsay, the defendants rely solely on this court's evidentiary ruling at the preliminary injunction hearing held January 12, 1993. However, at that early stage of the proceedings, the evidence was proffered to prove the intent of Frances Giblin in entering into the written option agreements, not for the narrow purpose of establishing that Frances Giblin made

the alleged promises and that the plaintiff bank employees reasonably relied on them.

13. *See* n. 11 *supra.* Even if the plaintiffs' burden was merely a preponderance of the evidence, the court would nevertheless hold that they have produced insufficient evidence of detrimental reliance to withstand summary judgment on the theory of promissory estoppel.

*son,* 119 Kan. 43, 237 Pac. 902, 903 (1925); *see also* John D. Calamari & Joseph M. Perillo, *Contracts* 252 (3d ed. 1987). The doctrine rests on the principle that a moral obligation to make recompense for a pecuniary benefit received will sustain a subsequent promise to pay for the benefit. *Holland v. Martinson,* 237 Pac. at 903.

The *Restatement (Second) of Contracts* § 86 states the material benefit rule as follows:

(1) A promise made in recognition of a benefit previously received by the promisor from the promisee is binding to the extent necessary to prevent injustice.

(2) A promise is not binding under Subsection (1)

(a) if the promisee conferred the benefit as a gift or for other reasons the promisor has not been unjustly enriched; or

(b) to the extent that its value is disproportionate to the benefit.

 The material benefit rule as a matter of law is not applicable in this case. The rule does not apply to a promise to pay more than called for in a pre-existing bargain between the same parties. *Restatement (Second) of Contracts* § 86 cmt. f. Further, if a third person, such as Frances Giblin, receives a benefit as a result of the performance of a pre-existing bargain, such as that between the plaintiff bank employees and the bank, the material benefit rule does not render binding the subsequent promise of the third person to pay extra compensation to the performing party. *See id.* In this case, the minority shareholder plaintiffs who have been employed by the bank have a pre-existing contract of employment. The material benefit rule therefore may not be invoked against Frances H. Giblin on the basis of her alleged promise to essentially provide additional compensation to them for providing their services to the bank.

Furthermore, the material benefit rule may not be invoked to enforce a promise if the value to the promisee would be disproportionate to the benefit conferred. *Restatement (Second) of Contracts* § 86(2)(b). In this case, enforcement of the 1989 option agreement would result in a windfall to the

minority shareholders by significantly increasing the collective value of their stock in the holding company by the difference between the 1989 option price, about $1.9 million, and the current fair market value of the trust's 770 shares, in excess of $4.2 million. Particularly because the plaintiffs who have remained employed by the bank have already been adequately compensated for their services, enforcement of the 1989 option agreement would have the result of disproportionately benefiting them, to the detriment of the trust.

Finally, Frances H. Giblin and the trust have not been unjustly enriched by the services performed by the plaintiff bank employees. *See Restatement (Second) of Contracts* § 86(2)(a). As the majority shareholders of the holding company that owned the bank, Frances Giblin, and later her trust, accepted the risks of such ownership as well as the benefits. For example, the compensation packages of the bank employees, as operating expenses of the bank, have a direct and ongoing impact on the value of the trust's stock in the bank holding company. That the bank has been successful, and as a result the value of the holding company stock has increased, does not mean that the majority shareholder has been unjustly enriched as a result of the services performed by the plaintiff bank employees, who were adequately compensated by the bank.

Consequently, as a matter of law the plaintiffs are not entitled to invoke the material benefit rule to enforce either the 1982 option agreement or the 1989 option agreement. The defendants are therefore entitled to summary judgment on plaintiffs' material benefit claim.

**IT IS BY THE COURT THEREFORE ORDERED** that the defendants' motion for summary judgment (Doc. 128) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that the defendants are granted summary judgment on the plaintiffs' claim in Count III of the first amended complaint based on the material benefit rule.

**IT IS FURTHER ORDERED** that the defendants are granted summary judgment

on the plaintiffs' claim in Count VII of the first amended complaint based on promissory estoppel.

**IT IS FURTHER ORDERED** that the defendants are granted partial summary judgment on their counterclaim seeking a declaratory judgment.

**IT IS FURTHER ORDERED** that the 1989 option agreement is unenforceable for lack of consideration; that the 1989 option agreement was repudiated and revoked prior to the date plaintiffs tendered the recited consideration therefor; and that the Frances H. Giblin Trust No. 1 is not obligated to sell its 770 shares of holding company stock to the holding company at the price stated in the 1989 option agreement.